STATE OF NORTH CAROLINA v. DANIEL BOONE

No. 382A82

(Filed 7 December 1982)

1. Rape and Allied Offenses § 5— first degree rape — first degree sexual offense — mental injury as serious personal injury

Proof of the element of infliction of "serious personal injury" required for a conviction of first degree rape under G.S. 14-27.2(a)(2)b. or first degree sexual offense under G.S. 14-27.4(a)(2)b. may be met by the showing of mental injury as well as bodily injury.

2. Rape and Allied Offenses § 5— requisites of serious personal injury

In order to support a finding of serious personal injury because of injury to the mind or nervous system in a prosecution for first degree rape or first degree sexual offense, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself.

3. Rape and Allied Offenses § 5— first degree rape — first degree sexual offense — mental injury — insufficient showing of serious personal injury

The State's evidence was insufficient to support a jury finding that the victim of an attempted rape and a sexual offense suffered such mental or emotional injuries as a result of defendant's acts which would constitute "serious personal injury" so as to raise the degree of the crimes from second degree to first degree where there was evidence that the victim was shaking, crying and hysterical immediately after the crimes were committed and after the officers arrived on the morning of the crimes, but there was no evidence of any residual injury to the mind or nervous system of the victim after the morning of the crimes.

4. Bills of Discovery § 6; Constitutional Law § 30— statements by witnesses — effect of discovery statute

G.S. 15A-904(a) only restricts pretrial discovery of witnesses' statements and does not bar the discovery of a prosecuting witness's statement at trial.

5. Bills of Discovery § 6; Constitutional Law § 30— written statement by prosecutrix — denial of motion at trial for discovery

The trial court did not err in the denial of defendant's motion at trial that the State be required to produce a written statement taken from the prosecutrix by the sheriff for use by defense counsel in impeaching the prosecutrix where the trial court examined the statement in camera and ordered that the statement be placed in a sealed envelope to be available for appellate review, and an examination of the statement by the appellate court revealed that there was nothing in the statement which tended to exculpate the defendant and there was no substantial inconsistency between the statement and the testimony of the prosecutrix.

**6. Criminal Law § 5.2— voluntary use of drugs—defense of unconsciousness—instruction not required**

The trial court in a prosecution for attempted first degree rape and first degree sexual offense correctly refused to instruct the jury on the defense of unconsciousness or automatism where all the evidence tended to show that defendant's mental state was caused by his voluntary smoking of the drug characterized as "angel dust."

**7. Criminal Law § 6; Rape and Allied Offenses § 6— first degree sexual offense—attempted rape—intoxication as defense**

Since the intent to commit the crime of sexual offense is inferred from the commission of the act, intent is not an essential element of the crime of first degree sexual offense, and intoxication is thus not a defense to that crime. However, intent is an essential element of attempted rape and intoxication may be a valid defense to that crime. Therefore, the trial judge properly submitted the defense of intoxication on the charge of attempted rape and properly declined to submit that defense on the charge of first degree sexual offense.

**8. Criminal Law § 113.1— jury instructions—no undue emphasis on State's evidence**

The trial judge did not place undue emphasis upon the State's evidence but fairly summarized the evidence by the State and defendant in a case in which the State produced more witnesses than defendant. Furthermore, had there been error in the summation of the evidence, it was waived when defendant failed to call the alleged error to the court's attention before the jury retired for its deliberations. G.S. 15A-1232.

**9. Criminal Law § 102.8— failure to testify—exclusion of explanation**

The trial court properly refused to permit defense counsel to explain to the jury the reason defendant did not testify. G.S. 8-54.

**10. Criminal Law § 114.2— recapitulation of evidence—no expression of opinion**

The trial court did not express an opinion in stating in his recapitulation of the evidence that defendant had said to the prosecutrix that he intended to have sexual intercourse with her where the evidence showed that defendant had used a vulgar word which conveyed the same meaning as "sexual intercourse."

APPEAL by defendant from *Tillery, Judge,* at the 21 January 1981 Criminal Session, HALIFAX Superior Court.

Defendant was charged in separate indictments with attempted first-degree rape and first-degree sexual act. The charges were consolidated for trial.

The State offered evidence tending to show that at about 6:00 a.m. on 18 September 1981, Winona Lynch Boone was at her home in rural Halifax County with her infant child and a young

niece. Her husband had already departed for work. Defendant, her husband's uncle, came to the door and asked to use the phone. She agreed and defendant made a call and then joined Mrs. Boone in watching television. Defendant rolled a substance which Mrs. Boone recognized as "angel dust" into a cigarette paper and smoked it. Shortly thereafter he began to act in such an irrational manner that it frightened Mrs. Boone and she ran into the bathroom. However, before she could secure the door he put his arm around her neck and threw her against a washing machine. He then pulled the victim into the bedroom, threw her on the floor, twisted her breasts, struck her on the side of her head and attempted to put his hand into her vagina. He pulled aside her underclothes and inserted his tongue into her vagina. He then told Mrs. Boone that she was going to suck him and pushed her head into his crotch. He did not unzip his pants or expose himself. He continued to talk and act in a very strange manner, and after the assault, he carried Mrs. Boone into the living room and made her sit in his lap while he stroked her hair. He thereafter forced her to go to a window, broke out the window with his fist and pushed her head through the opening while exclaiming, "Help me, Jesus, help me." He then jumped through the window and left the premises. Mrs. Boone called for help and later notified police officers of these events. Defendant was later seen standing naked in a nearby yard and was apprehended by the officers in a house which was located a short distance from the Boone residence.

The State also offered testimony tending to show that at the time of the assault and in the morning hours following the incident, Winona Lynch Boone was hysterical and crying. She had bruises and swelling about her forehead. Sheriff Ward, one of the witnesses who testified as to her condition, stated that he asked Mrs. Boone if she wanted to go to a doctor and she declined. He also testified that if she had been seriously injured, he would have insisted that she go to a doctor.

Defendant did not testify but offered Sheriff Ward as a witness and attempted through him to place into evidence a written statement that he had taken from Winona Lynch Boone. The trial judge did not allow this testimony to be placed into evidence. Sheriff Ward was also examined as to other matters contained in his previous testimony.

Defendant also offered Katie L. Boone as a witness. She testified that defendant came to her home in the early morning hours of 18 September 1981. At that time he appeared to be normal, and after she had prepared a bed for him, defendant retired. She did not see him when he left her home, but he telephoned at about 6:00 a.m. and requested that she ask her husband to come and get him when he awakened. He said that he was at the home occupied by Winona Lynch Boone and her husband.

The jury returned a verdict of guilty of first-degree sexual offense and guilty of attempted first-degree rape. Defendant appealed, and on 20 June 1982, we allowed defendant's motion to bypass the Court of Appeals on the charge of attempted first-degree rape.

*Rufus L. Edmisten, Attorney General, by James Peeler Smith, Assistant Attorney General, for the State.*

*Perry W. Martin and Donnie R. Taylor, for defendant appellant.*

BRANCH, Chief Justice.

Defendant assigns as error the trial court's denial of his motion to dismiss the charges of attempted first-degree rape and first-degree sexual offense.

G.S. 14-27.2 provides in part:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

&ast; &ast; &ast; &ast;

(2) With another person by force and against the will of the other person, and:

&ast; &ast; &ast; &ast;

b. Inflicts serious personal injury upon the victim or another person; or . . . .

G.S. 14-27.4, in pertinent part, reads as follows:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

\*   \*   \*   \*

(2) With another person by force and against the will of the other person, and:

\*   \*   \*   \*

b. Inflicts serious personal injury upon the victim or another person; or . . . .

It is defendant's position that the State has failed to prove beyond a reasonable doubt that defendant inflicted "serious personal injury" on the victim and therefore defendant, at most, could be convicted of attempted second-degree rape and second-degree sexual offense.

The General Assembly of 1979 redefined first-degree rape and, *inter alia*, included the language "serious personal injury" in lieu of the former language "serious bodily injury." At the same time the legislature created the crimes of first-degree and second-degree sexual offenses. One of the elements of the crime of first-degree sexual offense is the infliction of "serious personal injury" upon the victim. 1979 N.C. Sess. Laws, ch. 682.

In instant case the trial judge, in his mandate on the charge of first-degree sexual offense, instructed the jury:

So I charge you that if you find from the evidence and beyond a reasonable doubt that on this eighteenth day of September, 1981, Daniel Boone engaged in the act of cunnilingus, as I have defined that for you, with Winona Boone; and that he did so by threatening to beat her to death if she resisted; and that this was sufficient to overcome any resistance which Winona Boone might make; and that Winona Boone did not consent; and that it was against her will; and that Daniel Boone inflicted extreme terror, fear, agitation and produced a state of hysteria to the extent that this was a serious personal injury, then this would constitute the offense and it would be your duty to return a verdict of guilty of a first degree sexual offense.

In his charge on attempted first-degree rape the trial judge did not again attempt to define "personal injury" but instead instructed as follows:

Third, you must find beyond a reasonable doubt that he inflicted serious personal injury upon Winona Boone. I've already defined serious personal injury for you with respect to the other alleged offense, and I will not undertake to do it again simply to say to you that the same rule would apply as to what would be necessary to constitute serious personal injury.

Our examination of the entire charge leads us to conclude that the trial judge chose not to submit the case to the jury on the theory of actual "serious bodily injury" but rather limited the jury's consideration of the element of "serious personal injury" to mental or emotional injury.

This Court has not considered the meaning of the phrase "serious personal injury," and we find little guidance as to mental injury in our Court's treatment of the former language in the relevant statutes of the phrase "serious bodily injury."

The leading case defining "serious bodily injury" is in *State v. Jones*, 258 N.C. 89, 128 S.E. 2d 1 (1962), where it is stated:

The term 'inflicts serious injury' means physical or bodily injury resulting from an assault with a deadly weapon with intent to kill. The injury must be serious but it must fall short of causing death. Further definition seems neither wise nor desirable. Whether such serious injury has been inflicted must be determined according to the particular facts of each case.

*Id.* at 91, 128 S.E. 2d at 3.

In *Jones* the victim was shot in the back with a shotgun resulting in hospitalization for the removal of 17 birdshot pellets. There the Court held that the evidence was sufficient to carry the case to the jury on the question of "serious bodily injury."

Other cases holding that there was sufficient evidence to go to the jury on the question of "serious bodily injury" are *State v. Ferguson*, 261 N.C. 558, 135 S.E. 2d 626 (1964) [defendant while driving his pickup truck intentionally rammed into the back of the victim's automobile causing a "whiplash" injury which required two visits to the doctor. The victim testified that he continued to have cramps and pain in his legs]; *State v. White*, 270 N.C. 78, 153

S.E. 2d 774 (1967) [knife wounds requiring 64 stitches to close the wounds]; *State v. Roberts*, 293 N.C. 1, 235 S.E. 2d 203 (1977) [female victim suffered blows from defendant which knocked five teeth out of alignment, breaking the root of one tooth. The victim was required to use a metal brace in her mouth for six weeks and a medical expert testified the teeth would in all probability have to be extracted despite his treatment]. *See also, State v. Hefner*, 199 N.C. 778, 155 S.E. 879 (1930); *State v. Roseman*, 108 N.C. 765, 12 S.E. 1039 (1891); *State v. Shelly*, 98 N.C. 673, 4 S.E. 530 (1887). All of the cases above referred to involved tangible bodily injury and continuing suffering and pain. In its consideration of these cases, our Court has declined to attempt to define the substance of the phrase "serious bodily injury" and has adopted the rule clearly enunciated in *State v. Jones, supra*, and quoted with approval in the recent case of *State v. Roberts, supra*, that, "[w]hether such serious injury has been inflicted must be determined according to the particular facts of each case."

Because of the paucity of precedent in this or other jurisdictions concerning the question presented by this assignment of error, we turn for guidance to our civil cases involving damages for mental anguish in negligence cases. In those cases, it appears to be well settled in North Carolina that recovery in civil cases may be had where coincident in time and place with the act producing the mental stress, some actual physical impact or genuine physical injury also results from the defendant's wrongful acts. *King v. Higgins*, 272 N.C. 267, 158 S.E. 2d 67 (1967); *Williamson v. Bennett*, 251 N.C. 498, 112 S.E. 2d 48 (1960). *See also, Ford v. Blythe Bros. Co.*, 242 N.C. 347, 87 S.E. 2d 879 (1955); *Kistler v. R.R.*, 171 N.C. 577, 88 S.E. 864 (1916). This Court has also recognized that there may be recovery when the physical injury "consists of a wrecked nervous system instead of wounded or lacerated limbs, as those of the former class are frequently much more painful and enduring than those of the latter." *May v. Telegraph Co.*, 157 N.C. 416, 422, 72 S.E. 1059, 1061 (1911).

[1] Our consideration of the above principles of law convinces us, and we so hold, that proof of the element of infliction of "serious personal injury" as required by G.S. 14-27.2(2)b. and G.S. 14-27.4(2)b. may be met by the showing of mental injury as well as bodily injury.

[2]  It is impossible to enunciate a "bright line" rule as to when the acts of an accused cause mental upset which could support a finding of "serious personal injury." It would defy reason and common sense to say that there could be a forcible rape or forcible sexual offense which did not humiliate, terrorize and inflict some degree of mental injury upon the victim. Yet, the legislature has seen fit to create two degrees of rape and provide that one of the elements which may raise the degree of the crime from second degree to first-degree rape is the infliction of "serious personal injury." Likewise, the legislature has created two degrees of sexual offense by providing that one of the elements which may raise the degree of the crime from second-degree sexual offense to first-degree sexual offense is the infliction of "serious personal injury." We therefore believe that the legislature intended that ordinarily the mental injury inflicted must be more than the *res gestae* results present in every forcible rape and sexual offense. In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself. Obviously, the question of whether there was such mental injury as to result in "serious personal injury" must be decided upon the facts of each case.

[3]  In instant case there was evidence that the victim was shaking, crying and "hysterical" immediately after the crime was committed and after the officers arrived on the morning of the crime. It must be borne in mind that all of this testimony related to the morning hours of the day that the crime was committed. This record does not disclose that there was any residual injury to the mind or nervous system of the victim after the morning of the crime. The hysteria and crying described by the witnesses occurred nearly coincident with the crime and were results that one could reasonably expect to be present during and immediately after any forcible rape or sexual offense has been committed upon the female's person.

Upon the facts of this particular case, we hold that there was not sufficient evidence to support a jury finding that the victim suffered such mental or emotional injuries as a result of defendant's acts which would constitute "serious personal injury."

By his assignment of error No. 5, defendant contends that the trial judge erred by denying his motion to inspect a written statement taken from the prosecuting witness by Sheriff Ward and by not permitting defense counsel to use the statement for the purpose of impeaching the prosecuting witness.

At trial, defense counsel twice moved that the State be required to produce any written statement made by the prosecuting witness, Winona Lynch Boone, to any law enforcement officer. The court denied the motions. After defendant had completed the presentation of his evidence, the court made this statement:

> I intend to seal that statement. I want the record to reflect that I have examined it *in camera* and, in the event of any appeal of this case for any purpose, I would want the Court of Appeals to have the opportunity to view it and assess whether or not I was right or wrong in it in holding it out. I would also want the record to reflect so that the Court of Appeals would have the opportunity to rule squarely on the point that the reason I kept it out was because I felt that the statutory definition of documents did not cover a statement made by a State's witness which was made in answer to questions asked her by the investigating detective and was written in his hand and unsigned.
>
> The Court reasons that if the General Assembly had intended statements of prosecuting witnesses would be subject to discovery, it would have said so in plainer terms.

In *State v. Hardy*, 293 N.C. 105, 235 S.E. 2d 828 (1977), we established rules which are pertinent to the decision of this assignment of error. There Judge Copeland, speaking for the Court, stated:

> [W]e believe justice requires the judge to order an *in camera* inspection when a specific request is made at trial for disclosure of evidence in the State's possession that is obviously relevant, competent and not privileged. The relevancy for impeachment purposes of a prior statement of a material State's witness is obvious.
>
> We do not hold as the United States Supreme Court has held, as a matter of federal criminal procedure, that a defendant is automatically entitled to such statements at trial.

*Jencks v. United States*, 353 U.S. 657, 1 L.Ed. 2d 1103, 77 S.Ct. 1007 (1957), a holding that Congress subsequently approved and codified in the Jencks Act, 18 U.S.C. § 3500. [Citations omitted.]

> Instead, we hold that since realistically a defendant cannot know if a statement of a material State's witness covering the matters testified to at trial would be material and favorable to his defense, *Brady* and *Agurs* require the judge to, at a minimum, order an *in camera* inspection and make appropriate findings of fact. As an additional measure, if the judge, after the *in camera* examination, rules against the defendant on his motion, the judge should order the sealed statement placed in the record for appellate review.

*Id.* at 127-28, 235 S.E. 2d at 842.

[4] We first note that the trial judge's reliance upon the provisions of G.S. 15A-904(a) was misplaced. That section of the General Statutes only restricts *pretrial* discovery of witnesses' statements and does not bar the discovery of a prosecuting witness's statement at trial. *State v. Hardy, supra; State v. Detter*, 298 N.C. 604, 260 S.E. 2d 567 (1979).

The trial judge followed the dictates of the *Hardy* rule except that he failed to make appropriate findings of fact. This he should have done, but we do not find this to be a fatal omission. Obviously, the requirement that facts be found is for the benefit of the appellate courts, and although the judge's failure to find facts placed an additional burden on this Court, such failure did not adversely affect defendant.

[5] In the case before us, the witness Carolyn H. Lynch testified that she heard the prosecuting witness tell Sheriff Ward "exactly what happened." The testimony of Sheriff Ward as to what the witness told him was consistent with the prosecuting witness's testimony at trial. The testimony of Carolyn H. Lynch as to what defendant told her was consistent with the testimony of Sheriff Ward and the prosecuting witness. We have read the statement placed in the sealed envelope according to the *Hardy* requirements and find no substantial inconsistency in that statement and the witness's testimony at trial. Neither do we find any evidence which is exculpatory to defendant. It logically follows

that the trial judge must have likewise based his ruling upon the facts that the prosecuting witness's statement to Sheriff Ward was consistent with her testimony at trial and that there was nothing in the sealed statement which tended to exculpate defendant.

This assignment of error is overruled.

[6] Defendant next assigns as error the failure of the trial judge to charge on the affirmative defense of unconsciousness or automatism.

The defense of unconsciousness or automatism was first addressed by this Court in *State v. Mercer*, 275 N.C. 108, 165 S.E. 2d 328 (1969). We find there a quotation from *People v. Wilson*, 66 Cal. 2d 749, 756-57, 427 P. 2d 820, 825 (1967), approving the following jury instructions:

> Where a person commits an act without being conscious thereof, such act is not criminal even though, if committed by a person who was conscious, it would be a crime.

> This rule of Law does not apply to a case in which the mental state of the person in question is due to insanity, mental defect or voluntary intoxication resulting from the use of drugs or intoxicating liquor, but applies only to cases of the unconsciousness of persons of sound mind as, for example, somnambulists or persons suffering from the delirium of fever, epilepsy, a blow on the head or the involuntary taking of drugs or intoxicating liquor, and other cases in which there is no functioning of the conscious mind and the person's acts are controlled solely by the subconscious mind.

> When the evidence shows that a person acted as if he was conscious, the law presumes that he then was conscious. The presumption, however, is disputable and may be overcome or questioned by evidence to the contrary.

*Id.* at 118, 165 S.E. 2d at 335-36. In *Mercer*, the Court granted a new trial because of the trial judge's failure to charge on the defense of unconsciousness and for other errors. We here note that there was no evidence that the defendant Mercer was under the influence of intoxicating beverages or narcotics at the time of the alleged offenses. However, in *State v. Williams*, 296 N.C. 693,

252 S.E. 2d 739 (1979), the defendant was charged, *inter alia*, with murder. One of his defenses was the defense of unconsciousness. The evidence disclosed that the defendant had consumed large amounts of intoxicating beverages on the night preceding the murder and on the day the crime was committed. He testified that just before the crime was committed his mind "went blank." Justice Britt, writing for the Court, quoted the above stated language from *Mercer* and concluded,

> "In view of the overwhelming evidence that defendant's mental state at the time of the commission of the offenses in question was brought about by his excessive consumption of intoxicants, we hold that the trial court did not err in refusing to instruct the jury on the defense of unconsciousness."

*Id.* at 701, 252 S.E. 2d at 744.

Here, all the evidence tends to show that defendant's mental state was caused by the voluntary smoking of the drug characterized as "angel dust."

We therefore hold that the trial judge correctly refused to instruct on the defense of unconsciousness.

[7] The defendant further contends that the jury was confused because the trial judge instructed on intoxication as a defense to the charge of attempt to commit rape and refused to give a like instruction on the charge of first-degree sexual offense.

Intoxication is not a defense to the crime of rape. The intent to commit the crime of rape is inferred from the commission of the act. *State v. Hairston*, 222 N.C. 455, 23 S.E. 2d 885 (1943). This Court has not decided whether intent is an essential element of the crime of sexual offense. Examination of the provisions of G.S. 14-27.2 (rape) and the provisions of G.S. 14-27.4 (sexual offense) discloses that the only difference in the language setting forth the respective crimes is the description of the prohibited sexual conduct. We therefore conclude that since the elements of the crime of rape and the crime of sexual offense are so nearly identical in statutory language and in the nature of the crimes, that the intent to commit the crime of sexual offense is inferred from the commission of the act. Since intent is not an essential element of the crime of first-degree sexual offense, intoxication is not a defense of that crime. Therefore the trial judge properly declined

to charge on intoxication in his instruction on first-degree sexual offense.

We turn to the question of whether the trial judge was correct in charging on intoxication when he instructed on the crime of attempted rape.

G.S. 14-27.6 was enacted to replace the former crime of assault with intent to commit rape. In order to prove the offense set forth in G.S. 14-27.6, the State must prove that an accused had the intent to commit the crime and committed an act that goes beyond mere preparation, but falls short of actual commission of the offense. *State v. Surles,* 230 N.C. 272, 52 S.E. 2d 880 (1949); *State v. Hoover,* 14 N.C. App. 154, 187 S.E. 2d 453, *cert. denied,* 281 N.C. 316, 188 S.E. 2d 899 (1972). *See also, Survey of Developments in North Carolina Law,* 1979, 58 N.C. L. Rev. 1181, 1394-1402 (1980). Intent is an essential element of attempted rape and intoxication may be a valid defense to that crime. In summary, we hold that the trial judge properly submitted the defense of intoxication on the charge of attempted rape and properly declined to submit that defense as to the charge of first-degree sexual offense.

[8] By assignment of error No. 3, defendant contends that the trial judge expressed an opinion prejudicial to defendant in violation of G.S. 15A-1232.

G.S. 15A-1232 provides:

*Jury instructions; explanation of law; opinion prohibited.* —In instructing the jury, the judge must declare and explain the law arising on the evidence. He is not required to state the evidence except to the extent necessary to explain the application of the law to the evidence. He must not express an opinion whether a fact has been proved.

It is well settled in this jurisdiction that a person charged with a crime is entitled to a trial by an impartial judge, and any expression or intimation of an opinion by the judge during the course of the trial which prejudices the jury against a defendant warrants a new trial. *State v. Arnold,* 284 N.C. 41, 199 S.E. 2d 423 (1973); *State v. Carter,* 268 N.C. 648, 151 S.E. 2d 602 (1966). Defendant argues that the trial judge placed undue emphasis upon

the State's evidence by going into more detail in summarizing the State's evidence than when he summarized defendant's evidence. We note that the State produced more witnesses than defendant, and in our opinion the trial judge fairly summarized the evidence by the State and defendant. Further, had there been error in the summation of the evidence, it was waived when defendant failed to call the alleged error to the court's attention before the jury retired for its deliberations. *State v. Virgil*, 276 N.C. 217, 172 S.E. 2d 28 (1970); *State v. Looney*, 294 N.C. 1, 240 S.E. 2d 612 (1978).

[9] Defendant argues that the trial judge erred by sustaining the district attorney's objection to defense counsel's attempt to explain to the jury the reason defendant did not testify. We find no merit in this argument.

G.S. 8-54, in part, provides:

> In the trial of all indictments, complaints, or other proceedings against persons charged with the commission of crimes, offenses or misdemeanors, the person so charged is, at his own request, but not otherwise, a competent witness, and his failure to make such request shall not create any presumption against him.

In *State v. Bovender*, 233 N.C. 683, 65 S.E. 2d 323 (1951), this Court, in interpreting G.S. 8-54, stated:

> The decisions of this Court referring to this statute seem to have interpreted its meaning as denying the right of counsel to comment on the failure of a defendant to testify. The reason for the rule is that extended comment from the court or from counsel for the state or defendant would tend to nullify the declared policy of the law that the failure of one charged with crime to testify in his own behalf should not create a presumption against him or be regarded as a circumstance indicative of guilt or unduly accentuate the significance of his silence. *To permit counsel for a defendant to comment upon or offer explanation of the defendant's failure to testify would open the door for the prosecution and create a situation the statute was intended to prevent.* (Emphasis added.)

*Id.* at 689-90, 65 S.E. 2d at 329.

[10] Defendant further contends that the trial judge in his summation intimated that an element of the crime had been proven when he stated in his recapitulation of the evidence that defendant had said to the prosecuting witness that he intended to have sexual intercourse with her. Defendant avers that there was no evidence at trial that he made such statement. The record shows that defendant, in effect, said just that. The trial judge merely used the term "sexual intercourse" instead of a vulgar, four-letter word used by defendant which conveys the same meaning. This assignment of error is overruled.

Finally, defendant assigns as error the denial of his motions for appropriate relief. These motions appear to be merely formal and relate to matters heretofore discussed and decided. Further discussion is not merited.

In Case No. 81CRS11684, attempt to commit first-degree rape, the jury found that defendant (1) attempted to engage in vaginal intercourse with Winona Lynch Boone, (2) by force and against her will, and (3) that defendant inflicted serious personal injuries upon Winona Lynch Boone. Such findings, if supported by the evidence, would support a verdict of attempted first-degree rape. There was sufficient evidence to support jury findings as to the elements (1) and (2), but there was not sufficient evidence to support a jury finding of element (3). Thus, the evidence supports and the jury, in effect, found defendant to be guilty of the lesser-included offense of attempt to commit second-degree rape, a Class F felony.

In Case No. 81CRS11686, defendant was charged with a first-degree sexual offense and the jury found that defendant (1) engaged in a sexual act with Winona Lynch Boone, (2) by force and against her will, and (3) inflicted serious personal injury upon Winona Lynch Boone. Such findings, if supported by the evidence, would support a verdict of first-degree sexual offense. There was sufficient evidence to support jury findings of the elements (1) and (2), but there was not sufficient evidence to support a jury finding of element (3). Thus, the evidence supports and the jury, in effect, found defendant to be guilty of second-degree sexual offense, a Class D felony.

The judgments in Cases Nos. 81CRS11684 and 81CRS11686 entered in the Superior Court of Halifax County are vacated, and

this cause is remanded to that court where with defendant and his counsel present, defendant will be sentenced in accordance with this opinion.

Judgments vacated and cases remanded for resentencing.