STATE OF NORTH CAROLINA v. DWIGHT WRIGHT MAYSE

No. 8929SC768

(Filed 20 March 1990)

1. **Rape and Allied Offenses § 5 (NCI3d)— first degree rape— evidence of deadly weapon—sufficient**

   The trial court did not err by denying defendant's motion to dismiss a charge of first degree rape where the victim testified that there was a hunting knife lying on a table which defendant picked up while he threatened to kill her and that defendant referred to a .25 handgun, so that the victim reasonably believed that defendant had an object which was a dangerous weapon that he would use.

   **Am Jur 2d, Rape §§ 63, 67.**

2. **Rape and Allied Offenses § 5 (NCI3d)— first degree rape— evidence of serious mental injury—sufficient**

   There was sufficient evidence that defendant in a first degree rape prosecution inflicted serious injury on the victim where the victim testified that she had given up her course of study at a technical college because of her inability to concentrate, she had moved from the city where she lived because people at work treated her as if she had some kind of disease, she felt degraded and ashamed, and she felt that people were looking at her and whispering; she had received professional help from the mental health center and from a shelter for abused women; she had never had any problems of this sort before the alleged crimes; and the mental injury continued up to the time of trial seven months after the incidents.

   **Am Jur 2d, Rape §§ 63, 67.**

3. **Rape and Allied Offenses § 6 (NCI3d)— first degree rape— instructions on deadly weapon—no error**

   The trial court in a first degree rape prosecution did not err in its instructions to the jury on the deadly weapon element where the evidence and the verdict sheet support the conclusion that the jury understood that it must unanimously decide that the defendant employed an object which the victim reasonably believed was a dangerous weapon.

   **Am Jur 2d, Rape § 108.**

**4. Kidnapping § 1.2 (NCI3d)— first degree kidnapping—victim not released**

The trial court properly denied defendant's motion to dismiss the first degree kidnapping charge where defendant abducted the victim in her own automobile, took her car keys from the ignition and never returned them to the victim, and the victim escaped by her own wits rather than by being released by defendant in that she used a duplicate set of keys in her pocketbook of which defendant had no knowledge.

**Am Jur 2d, Abduction and Kidnapping §§ 11, 12, 13, 15, 16, 18.**

**5. Criminal Law § 162 (NCI3d)— first degree rape—doctor's testimony to victim's credibility—objections not timely**

The trial court in a first degree rape prosecution did not err by allowing a medical doctor to testify as to the victim's credibility where defendant's objections were neither timely nor did they clearly present the alleged error. N.C.G.S. § 15A-1446(a) and (b).

**Am Jur 2d, Rape §§ 65, 68, 68.5.**

**6. Constitutional Law § 78 (NCI3d)— rape—life sentence—not cruel and unusual**

A sentence of life imprisonment for first degree rape was not cruel and unusual punishment.

**Am Jur 2d, Rape §§ 112, 113.**

APPEAL by defendant from a judgment entered 21 February 1989 by *Judge Claude Sitton* in RUTHERFORD County Superior Court. Heard in the Court of Appeals 13 February 1990.

The State's evidence tended to show that, as the victim was leaving a convenience store about 2:00 a.m., the defendant came out of the store, jumped into the passenger seat of her car, stuck "something in [her] ribs," grabbed her around the neck and told her to drive. The victim testified that, at an isolated area on a dirt road, defendant struck her in the jaw with his fist, threatened to use "a 25" to kill her, and sexually assaulted her. He then drove her car to another location and sexually assaulted her again. At a third location, victim was again raped and forced to go in a trailer where defendant picked up a 12-inch hunting knife twice

STATE v. MAYSE

[97 N.C. App. 559 (1990)]

and threatened to kill her. Victim testified that she escaped when she found additional car keys in her pocketbook and drove away from the trailer. Defendant was arrested at his aunt's house where victim's original set of keys were found. Defendant testified at trial in his own behalf, stating that he and the victim had consensual sexual relations after taking cocaine.

The jury found the defendant guilty of first-degree rape and first-degree kidnapping. Defendant was sentenced to life imprisonment for first-degree rape and a consecutive forty years in prison for first-degree kidnapping. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Elisha H. Bunting, Jr., for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Mark D. Montgomery, for the defendant-appellant.*

LEWIS, Judge.

Defendant addresses five assignments of error in his appeal.

I: Dismissal of the first-degree rape charge.

[1] The defendant moved for dismissal of the first-degree rape charge at the close of the State's case and contends on appeal that the trial court erred in denying that motion. First-degree rape is defined in North Carolina in G.S. § 14-27.2 in pertinent part as follows:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

. . .

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon; or

b. Inflicts serious personal injury upon the victim. . . .

Defendant states that there was insufficient evidence to support either theory of first-degree rape.

A: Theory I—Employing a dangerous weapon.

Defendant first contends that there is no evidence to support a finding that a dangerous or deadly weapon was employed or displayed. The victim indicated that after she was raped inside the shack, she was forced to go to a trailer located nearby where there was a "hunting knife laying on the table" which was "twelve or more inches long." At trial, the victim testified about that knife.

Q: [D]id you ever see him touch the knife?

A: Yes, he picked it up a couple times.

. . .

Q: What was he saying or doing when he picked the knife up?

. . .

A: He told me, he looked me dead in the eye, and he said, "If you turn colors on me, I'll kill you."

. . .

Q: . . . Did he have the knife when he said that?

A: Yes. He was talking crazy. . . .

The North Carolina statute cited above which defines first-degree rape was changed in 1980 so that the State no longer has to show that a deadly weapon was used in a particular manner to procure the victim's submission. G.S. § 14-21(1)(b), repealed effective 1980. In its current form, the statute "simply necessitates a showing that a dangerous or deadly weapon was employed or displayed in the course of a rape *period*." (Emphasis in original.) *State v. Sturdivant*, 304 N.C. 293, 299, 283 S.E.2d 719, 724-25 (1981).

In *State v. Whittington*, a first-degree sexual offense case, the Court stated that there was "a series of incidents forming a continuous transaction between defendant's wielding the knife and the sexual assault. . . . [I]t is of no consequence that defendant was not in possession of the deadly weapon at the precise moment that penetration occurred." 318 N.C. 114, 120, 347 S.E.2d 403, 406 (1986).

The victim testified that defendant also stuck a hard object into her ribs when defendant first jumped into victim's automobile and that defendant stated: "If this can't take care of you, I have

a 25 that will," an apparent reference to a .25 revolver. Since the victim reasonably believed that the defendant had an object which was a dangerous weapon that he would use, the trial court did not err in denying defendant's motion to dismiss the first-degree rape charge.

B:  Theory II — Infliction of serious mental injury.

[2]  Defendant contends that there is no evidence to support a finding that he inflicted serious mental injury on the witness. *State v. Boone*, 307 N.C. 198, 297 S.E.2d 585 (1982), presents the standard for determining whether "the acts of the accused cause mental upset which could support a finding of 'serious personal injury.'" *Id.* at 205, 297 S.E.2d at 589.

> We therefore believe that the legislature intended that ordinarily the mental injury inflicted must be more than the *res gestae* results present in every forcible rape and sexual offense. In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself. Obviously, the question of whether there was such mental injury as to result in 'serious personal injury' must be decided upon the facts of each case.

*Id.* at 205, 297 S.E.2d at 590. The victim testified at trial about her "mental state" since the time of the alleged crimes. She stated that because of her inability to concentrate, she gave up her course of study at the technical college where she had been enrolled. She also moved from the city where she lived because "where [she] was working people treated [her] like [she] had some kind of disease." She described her reasons for leaving school and her job and moving. "I felt so degraded; I felt so ashamed, like everybody was looking at me and whispering. I was scared; I was afraid. I mean, some people knew what had happened. . . . [People] walked around like they were on eggshells. You know, it was like they'd whisper when I'd come into a room or something." She received professional help from the Mental Health Center and from the shelter for abused women. Victim indicated that she had never had any problems of this sort before the alleged crimes and that the mental injury continued "even up to this very moment" which was seven months after the incidents. The State has clearly offered

"proof that such injury was not only caused by the defendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself" as required by *State v. Boone* cited above. Therefore, we hold that the victim suffered serious mental injury and that defendant's motion to dismiss was properly denied.

II:   Jury instructions on the deadly weapon element.

[3]   Defendant contends that "the trial court's instructions to the jury on the deadly weapon element of first degree rape denied defendant a unanimous verdict and allowed him to be convicted on a theory not supported by the evidence."

The verdict sheet stated:

Members of the Jury, for your unanimous Verdict, do you find the defendant,

(1) Guilty of First Degree Rape. . .

   (a) That the defendant employed an object that the victim reasonably believed was a dangerous or deadly weapon.
       . . .

In *State v. Connard*, the Court states:

[T]here is no requirement that the written verdict contain each and every element of the subject offense. G.S. § 15A-1237; *State v. Sanderson*, 62 N.C. App. 520, 302 S.E.2d 899 (1983). It is sufficient if the verdict can be properly understood by reference to the indictment, evidence and jury instructions. *Id.; State v. Perez*, 55 N.C. App. 92, 284 S.E.2d 560 (1981), *disc. rev. denied*, 305 N.C. 590, 292 S.E.2d 573 (1982).

81 N.C. App. 327, 335-36, 344 S.E.2d 568, 574 (1986), *aff'd*, 319 N.C. 392, 354 S.E.2d 238 (1987). The evidence and the verdict sheet in this case support the conclusion that the jury understood that it must decide unanimously that the defendant employed an object which the victim reasonably believed was a dangerous weapon.

III:   Dismissal of the kidnapping charge.

[4]   Defendant was convicted of first-degree kidnapping which includes as one of its elements the following as found in G.S. § 14-39(b); "If the person kidnapped . . . was not released by the defendant in a safe place. . . , the offense is kidnapping in the first degree.

. . ." According to State's evidence, when defendant abducted the victim in her own automobile and they went to the trailer, he took the victim's car keys from the ignition and never returned them to the victim. In order to escape, the victim used a duplicate set of keys which were in her pocketbook and of which the defendant had no knowledge. Defendant never "released" the victim; she escaped by her wits. The motion to dismiss was properly denied.

IV:   Expert testimony that the victim was "genuine"
and "appropriately upset."

[5]   The defendant contends that it was error to allow a medical doctor who examined the victim to testify as to victim's credibility. Defendant specifically addresses two statements made by the witness. In both instances, we hold that defendant's counsel failed to make an "appropriate and timely objection" and that he has therefore waived his right to "assert the alleged error on appeal" as required by G.S. § 15A-1446(a) and (b). Counsel must have "clearly presented the alleged error to the trial court." *Id.*

The first statement was included in the following exchange.

Q: How would you describe [the victim's] emotional and mental state?

A: Well, she was crying and upset, and found it difficult at first to talk or discuss anything with me. She seemed quite appropriately upset by the history that she gave.

Q: What do you mean when you say that she was appropriately upset?

A: With her history of having been injured and/or raped that morning—

[Counsel for defendant]: Objection

A: It seemed very appropriate.

THE COURT: Sustained as to the last statement, as to, "being raped earlier that morning." Do not take that into consideration in your deliberations.

Defendant challenges the admissibility of the witness' statement that the victim was "appropriately upset," stating that such a statement "unfairly assisted the State in this credibility contest between the prosecuting witness and the defendant. Defendant's counsel

did not object until after the witness' second statement above and the court ruled only on that statement concerning 'being raped that morning.' " Therefore, the objection was neither timely nor did it address the testimony which defendant's counsel is now discussing on appeal.

The second set of questions and answers proceeded as follows:

Q: Did, did she seem to be, you say that she was upset and crying, did that seem to be genuine in your opinion?

A: Yes.

Q: So you didn't feel that you were dealing with somebody who was play acting at that time?

A: No.

[Counsel for defendant]: Objection.

THE COURT: Sustained. Do not lead the witness.

[Counsel for the State]: Yes sir.

Defendant discusses the alleged error in admitting the testimony concerning the credibility of the victim as indicated by the statements that the victim's behavior was "genuine" and that she was not "play acting." Once again, the alleged objection to the first question (which included the term "genuine") was not timely and the objection to the second question (with the term "play acting") did not address "the alleged error." In this instance, the Court believed that the objection was to the *form* instead of the substance of the question, that is, that counsel was leading the witness. No further objection was made by defendant after his objection was sustained.

Since the objections were neither "timely" nor did they "clearly [present] the alleged error," G.S. § 15A-1446(a) and (b), defendant has waived his right to assert the alleged error on appeal.

V:   Cruel and unusual punishment.

[6] Defendant was convicted of first-degree rape, a violation of G.S. § 14-27.2, for which he received the maximum term. In his brief, defendant recognized the facial validity of the statutes; however, he alleged that the sentence constitutes cruel and unusual punishment as applied to him. In presenting his argument, defendant relies on *Solem v. Helm*, 463 U.S. 277 (1983). The North Carolina

Supreme Court has already distinguished *Solem* from cases in which the offense is first-degree rape. In *Solem*, the defendant "received a sentence of life imprisonment without parole after pleading guilty to uttering a 'no account' check for $100, for which the maximum punishment was ordinarily five years imprisonment." *State v. Peek*, 313 N.C. 266, 276, 328 S.E.2d 249, 256 (1985). In the instant case, on the other hand, the defendant was convicted of first-degree rape which the North Carolina General Assembly has chosen to punish as a Class B felony with a mandatory life sentence. G.S. § 14-27.2(b). We hold that the sentence imposed does not constitute cruel and unusual punishment.

No error.

Judges WELLS and COZORT concur.