STATE OF NORTH CAROLINA v. FRANK DOUGLAS EVERHARDT

No. 515PA89

(Filed 13 June 1990)

1. **Assault and Battery § 22 (NCI4th) — felonious assault — mental injury as serious injury**

   A mental injury will support the element of serious injury under the felonious assault statute, N.C.G.S. § 14-32.

   **Am Jur 2d, Assault and Battery §§ 48-50, 53-55.**

2. **Assault and Battery § 22 (NCI4th) — felonious assault — mental injury — sufficient evidence of serious injury**

   The state presented sufficient evidence of serious injury to support defendant's conviction of assault with a deadly weapon inflicting serious injury where its evidence tended to show that, for six successive evenings, defendant sexually assaulted his former wife with various devices and subjected her to various humiliating acts; the devices employed by defendant to assault the victim, while potentially deadly, were utilized in a manner calculated to degrade and dehumanize the victim; and the victim suffered a mental injury requiring several hospital admissions and treatment by antidepressant medication up to the time of trial.

   **Am Jur 2d, Assault and Battery §§ 48-50, 53-55.**

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 96 N.C. App. 1, 384 S.E.2d 562 (1989), finding no error in a judgment of imprisonment entered by *Ferrell, J.*, at the 15 September 1988 Session of Superior Court, CATAWBA County, upon defendant's conviction for assault with a

deadly weapon inflicting serious injury. Heard in the Supreme Court 10 April 1990.

*Lacy H. Thornburg, Attorney General, by David R. Minges, Assistant Attorney General, for the State.*

*Daniel R. Green, Jr. for defendant-appellant.*

WHICHARD, Justice.

The State's evidence tended to show that defendant and the victim were married in July 1974 and divorced in October 1985. The couple separated in July 1984 after the occurrence of the events leading to defendant's conviction. The victim testified that for six successive evenings, beginning on 15 July 1984, defendant assaulted her sexually and subjected her to various humiliating acts. On the first evening, defendant bound the victim, pointed a loaded pistol at her head, threatened her life, and inserted the leg from a footstool into her vagina for ten to fifteen minutes. Defendant then performed vaginal intercourse on the bound victim and forced her to perform fellatio. Over the course of the next five evenings, defendant used a syringe to inject liquor into the victim's vagina, inserted various vegetables into her vagina which he then forced into her mouth, inserted cola bottles and the footstool leg into her vagina, burned her vagina with a cigarette lighter, dragged her about the house by her hair, and forced her to engage in vaginal sex and fellatio. Defendant continued to bind the victim and threaten her while performing these acts, telling her that he would kill her if she told anyone what he was doing to her, that she was stuck with him for the rest of her life, and that he would fix her so no other man would want her. On the sixth evening defendant again bound the victim and threatened her with the pistol, then had vaginal and oral sex with her against her will. Defendant then took a plate of spaghetti from the kitchen, ejaculated onto it, and forced the victim to eat it. Defendant inserted a curling iron into the victim's vagina, telling her all the while that she was ugly and "a pile of shit."

After this period of sustained abuse, the victim took her children and went to live with her mother. She testified that she had stayed with defendant up to that point because she feared that defendant would carry out his threats to kill her, and she feared for the safety of her two children. She told no one of the abuse for approximately two years because she was ashamed and afraid of defend-

ant. She testified, "I felt like I was the lowest person on the face of the earth. I had no self-esteem, no confidence in myself."

In January 1985 the victim entered the First Step support program for victims of spousal abuse. Her counselor described her as being "very timid, very weak both emotionally and physically" when she entered the program. She was hospitalized for two weeks in September 1985 for depression and suicidal tendencies. Her psychiatrist, Dr. Schmitt, testified that she was severely depressed and suffered from poor appetite, insomnia, anxiety, and feelings of hopelessness and helplessness.

In August 1986 the victim was again hospitalized for suicidal tendencies, severe depression, and anorexia nervosa. She remained in the hospital for approximately four weeks. It was during this second hospitalization that she first told her doctor of the abuse defendant inflicted upon her in July 1984. Dr. Schmitt testified that he prescribed antidepressant medication for the victim during her hospitalizations and up to the time of trial.

In December 1986 the victim entered the Raider Institute and underwent an intensive six-week program for treatment of her anorexic condition. Twelve weeks of outpatient therapy followed this last hospitalization. Dr. de la Garza, medical director of the program, testified that the victim was severely malnourished when she entered the program. He testified that in his opinion she was trying to make herself unattractive sexually by starving herself because of the sexual abuse she had suffered in the past.

At the close of the State's evidence, the trial court denied defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. The Court of Appeals addressed, among other issues, the question of whether a mental injury can support the "serious injury" element of N.C.G.S. § 14-32(b). This statute provides: "Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class H felon." N.C.G.S. § 14-32(b) (1986). The Court of Appeals stated that it was not at liberty to extend the definition of serious injury under the felonious assault statute to include mental injury, but it concluded that the State had presented sufficient evidence of physical injury, pointing to the physical sequelae accompanying the victim's mental illness, such as severe headaches, insomnia, and anorexia nervosa. *State v. Everhardt*, 96 N.C. App. 1, 13, 384 S.E.2d 562, 569 (1989). On 18 January 1990 we allowed defend-

ant's petition for discretionary review, limited to the questions of whether mental injury will support the element of serious injury under N.C.G.S. § 14-32, and if not, whether the evidence was sufficient to support a finding of physical injury.

We have repeatedly defined the serious injury element of N.C.G.S. § 14-32 to mean a physical or bodily injury. *State v. Joyner*, 295 N.C. 55, 65, 243 S.E.2d 367, 373 (1978); *State v. Ferguson*, 261 N.C. 558, 560, 135 S.E.2d 626, 627-28 (1964); *State v. Jones*, 258 N.C. 89, 91, 128 S.E.2d 1, 3 (1962). We most recently reiterated this definition in *State v. James*, 321 N.C. 676, 688, 365 S.E.2d 579, 586 (1988). However, in *James*, as in previous cases, the evidence at trial and the issues presented on appeal did not require resolution of the question whether a mental injury may ever fulfill the requirement of serious injury under the felonious assault statute. We have never held that mental injuries of the type suffered by the victim here may not constitute serious injury within the meaning and intent of N.C.G.S. § 14-32. The injuries inflicted in the preceding cases were physical in nature, thus permitting us to equate a serious injury with a physical harm of sufficient gravity.

[1] The evidence here does not permit such a facile definition. The assaults perpetrated on the victim were in the main psychologically torturous in nature, calculated to inflict mental or emotional injury rather than bodily injury. The devices employed by defendant to assault the victim, while potentially deadly as found by the jury, were utilized in a manner calculated to degrade and dehumanize the victim. This is illustrated by defendant's threats and insults repeated to the victim during the perpetration of the assaults, as when he reminded her that she was ugly, that no other man would ever want her, and that she was stuck with him for the rest of her life. While it is possible to consider the injuries suffered by the victim in light of the physical symptoms she suffered in conjunction with her mental illness, as did the Court of Appeals, we instead hold that serious injury, within the meaning and intent of that term as used in N.C.G.S. § 14-32, includes serious mental injury caused by an assault with a deadly weapon.

We reached a similar result in *State v. Boone*, 307 N.C. 198, 297 S.E.2d 585 (1982), in which we defined the element of "serious personal injury" under our first-degree rape and sexual offense statutes to include mental injury. *Boone*, 307 N.C. at 204, 297 S.E.2d

at 589. Defendant points to the General Assembly's substitution of "serious personal injury" for the former "serious bodily injury" in the language of the rape and sexual offense statutes, 1979 N.C. Sess. Laws ch. 682, and protests that the legislative history of the felonious assault statute does not evince a parallel intent to broaden the definition of "serious injury." We do not find this argument persuasive, as the felonious assault statute never contained the element of a serious *bodily* injury in the first instance; thus, a change in the statutory language to broaden the scope of "serious injury" is not required. We note that "serious injury" may be construed to be as broad or broader than "serious personal injury," as the former contains no adjective qualifying the nature of the injury, other than the requirement that it be a serious one.

The compelling evidence of mental injury presented in this case illustrates the observation that " 'the mind is no less a part of the person than the body, and the sufferings of the former are sometimes more acute and lasting than those of the latter.' " *Young v. Telegraph Co.*, 107 N.C. 370, 385, 11 S.E. 1044, 1048 (1890) (quoting 3 Suth. Dam., 260). As we stated in *Boone*, we can offer no "bright line" rule to determine categorically when the acts of a defendant cause mental damage sufficient to support a finding of serious injury. *Boone*, 307 N.C. at 205, 297 S.E.2d at 589. In the context of the felonious assault statute, we have long held that the seriousness of the injury inflicted "must be determined according to the particular facts of each case." *State v. Jones*, 258 N.C. at 91, 128 S.E.2d at 3. The same rule must apply in cases where the serious injury caused by the assault is mental in nature.

[2] Here, the State presented evidence that the victim suffered a mental injury requiring several hospital admissions and treatment by antidepressant medication up to the time of trial. Based on this evidence, the trial court did not err in denying defendant's motion to dismiss at the close of the State's evidence. Because we hold that a mental injury will support the element of serious injury under N.C.G.S. § 14-32, we need not consider whether the evidence was sufficient to support a finding of physical injury.

For the reasons stated, we affirm the Court of Appeals.

Affirmed.