STATE OF NORTH CAROLINA, Plaintiff v. CHRISTOPHER BAKER, Defendant

No. 9215SC39

(Filed 6 April 1993)

**1. Rape and Allied Offenses § 5 (NCI4th)— rape—serious personal injury—mental injury—evidence insufficient**

The trial court erred by denying defendant's motions to dismiss the charge of first degree rape, but sufficient evidence of second degree rape was presented, where no evidence was presented to show that defendant possessed or used any type of weapon in the commission of the assault or that anyone aided or abetted him; the State sought to prove first degree rape based on serious personal injury; the victim testified that defendant grabbed her arms and pushed her into her bedroom where he threw her face down onto the bed, restraining her arms while he forced her to have intercourse; the victim was treated at a hospital following the assault; her treating physician testified that she did not observe any bruises, abrasions or any evidence of trauma to the victim's arms, wrists or vagi..al area; the victim did not complain of any bodily injuries as a result of the assault; the State offered evidence tending to show that the victim was depressed, ashamed, embarrassed and experienced nightmares, headaches and weight loss immediately following the assault; no evidence was presented to show whether or for how long these problems persisted; the victim testified that she did not seek medical treatment for these problems and the problems had been resolved for the most part by the time of trial; however, the victim also testified that she quit her job two days after the assault and left her infant son in the care of her mother for approximately nine months following the rape. The mental

injuries which the victim suffered in this case represent the *res gestae* results present in every forcible rape. N.C.G.S. § 14-27.2(a)(2)b.

2. **Evidence and Witnesses § 2750.1 (NCI4th)— rape—cross-examination about drug addiction—door opened by defendant**

The trial court did not err in a rape prosecution by allowing the State to cross-examine defendant about his drug addiction where defendant opened the door by testifying on direct examination about whether he had smoked marijuana or taken any drugs on the night of the rape.

**Am Jur 2d, Witnesses § 417.**

3. **Criminal Law § 1078 (NCI4th)— second degree sexual offense—sentence greater than presumptive term—no aggravating factors—error**

The trial court erred by sentencing defendant to a term of twenty years for second degree sexual offense without finding any aggravating factors where defense counsel incorrectly advised the court during the sentencing hearing that the presumptive sentence was twenty years rather than twelve years. N.C.G.S. § 15A-1340.4(b); N.C.G.S. § 14-27.5.

Appeal by defendant from judgments entered 16 August 1991 by Judge Hollis M. Owens, Jr., in Orange County Superior Court. Heard in the Court of Appeals 11 February 1993.

Defendant was charged in proper bills of indictment with rape in violation of G.S. §§ 14-27.2(a)(2) and 14-27.3(a)(1), and sexual offense in violation of G.S. §§ 14-27.4(a)(2) and 14-27.5(a)(1). The evidence presented at trial tends to show the following:

On 20 August 1990, the victim, Tammy Medlin, and her eleven month old son were living with a friend, Penny Brown, in her mobile home at the Windhams Trailer Park in Efland, North Carolina. At that time, Ms. Brown was dating the defendant. Shortly after midnight on 21 August 1990, defendant came to the trailer and pounded on the .door. Everyone inside the trailer was asleep, but Ms. Medlin was awakened by the noise and answered the door. When she released the chain lock, defendant grabbed her and pinned her against the wall, holding her hands behind her back. Defendant began kissing her and, despite her protests, inserted his finger into her vagina. Defendant then pushed Ms. Medlin into her bedroom

where he threw her onto the bed face down, restrained her arms and forced her to have vaginal intercourse.

Shortly thereafter, defendant's friend, Page Kimery, who had been waiting outside in defendant's car, came to the door. At this point, defendant stopped having intercourse with Ms. Medlin and answered the door. Ms. Medlin told Kimery that defendant had raped her. Defendant then went into Ms. Brown's bedroom, and they began to fight. Defendant was physically beating Ms. Brown, and Ms. Medlin left the trailer to call the police. The police met Ms. Medlin, and she told them defendant had raped her.

Ms. Medlin was taken to the hospital where she told her treating physician that she had been raped. The physician testified that she did not observe any bruises, abrasions or other signs of trauma on Ms. Medlin's arms, wrists or vaginal area.

Ms. Medlin testified that immediately following the assault, she felt depressed, ashamed and embarrassed and experienced nightmares, headaches and weight loss. She quit her job as a cook and waitress at a pizza restaurant in Mebane, North Carolina two days after the assault because she "couldn't handle working with the public anymore" and felt that everyone knew what had happened to her. Ms. Medlin moved from the trailer three weeks after the incident. She stayed with her mother and stepfather for approximately two weeks and left her eleven month old son in their care for the next nine months because she could not care for him. Ms. Medlin contacted the rape crisis center, but did not seek any other counseling or treatment.

At the time of trial, Ms. Medlin was employed and had resumed caring for her son. She was still experiencing difficulty sleeping at times, but had regained some of the weight she had lost.

The jury found defendant guilty of first degree rape and second degree sexual offense. From judgments sentencing defendant to life imprisonment for first degree rape and for a concurrent term of twenty years for second degree sexual offense, defendant appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Philip A. Telfer, for the State.*

*Glover & Petersen, P.A., by James R. Glover, for defendant-appellant.*

MARTIN, Judge.

**[1]** Defendant first assigns error to the trial court's denial of his motions to dismiss the charge of first degree rape. He argues that "[t]he evidence was not sufficient to prove beyond a reasonable doubt that the defendant inflicted 'serious personal injury' of the kind which distinguishes first degree rape from second degree rape." For the reasons set forth below, we agree and order that the judgment sentencing defendant to life imprisonment for first degree rape be vacated and the cause remanded for entry of judgment on the charge of second degree rape.

The indictment in the present case was sufficient to charge defendant with both first and second degree rape. G.S. § 14-27.2 states in part:

(a) A person is guilty of rape in the first degree if the person engages in vaginal intercourse:

(2) With another person by force and against the will of the other person, <u>and</u>:

a. Employs or displays a dangerous weapon or an article which the other person reasonably believes to be a dangerous weapon; or

b. Inflicts serious personal injury upon the victim or another person; or

c. The person commits the offense aided and abetted by one or more other persons. (Emphasis added.)

N.C. Gen. Stat. § 14-27.2 (1986). By contrast, G.S. § 14-27.3 defines second degree rape as follows:

(a) A person is guilty of rape in the second degree if the person engages in vaginal intercourse with another person:

(1) By force and against the will of the other person . . . .

N.C. Gen. Stat. § 14-27.3 (1986). As defendant correctly notes, first and second degree rape are distinguished by the existence, in addition to forcible, nonconsensual intercourse, of one or more of those elements enumerated in G.S. § 14-27.2(a)(2)(a-c).

In the present case, no evidence was presented to show that defendant possessed or used any type of weapon in the commission

of the assault, or that anyone aided or abetted him. Instead, the State sought to prove defendant's guilt of first degree rape by proof that he engaged in forcible vaginal intercourse with Ms. Medlin against her will and "inflicted serious personal injury upon [her]." Taking the evidence in the light most favorable to the State, we find the evidence insufficient to show that in the commission of the rape, defendant inflicted serious personal injury upon Ms. Medlin; and therefore, the submission of the charge of first degree rape to the jury was error.

In the case at bar, the victim testified that defendant grabbed her arms and pushed her into her bedroom where he threw her face down onto the bed, restraining her arms while he forced her to have intercourse. The victim was examined at a hospital following the assault. Her treating physician testified that she did not observe any bruises, abrasions or any evidence of trauma to the victim's arms, wrists or vaginal area. Furthermore, the victim did not complain of any bodily injuries as a result of the assault.

Our Supreme Court has held, however, that "proof of the element of infliction of 'serious personal injury' as required by G.S. § 14-27.2[(a)](2)b . . . may be met by the showing of mental injury as well as bodily injury." *State v. Boone*, 307 N.C. 198, 204, 297 S.E.2d 585, 589 (1982). Chief Justice Branch, writing for the Court, explained:

> It is impossible to enunciate a 'bright line' rule as to when the acts of an accused cause mental upset which could support a finding of 'serious personal injury.' It would defy reason and common sense to say that there could be a forcible rape or forcible sexual offense which did not humiliate, terrorize and inflict some degree of mental injury upon the victim. Yet, the legislature has seen fit to create two degrees of rape and provide that one of the elements which may raise the degree of the crime from second degree to first-degree rape is the infliction of 'serious personal injury.' . . . We therefore believe that the legislature intended that ordinarily the mental injury inflicted must be more than the *res gestae* results present in every forcible rape and sexual offense. In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the State must ordinarily offer proof that such injury was not only caused by the de-

fendant but that the injury extended for some appreciable time beyond the incidents surrounding the crime itself. (Emphasis added.)

*Boone,* at 205, 297 S.E.2d at 589.

The Court further noted that the question of whether evidence of mental injury is sufficient to constitute "serious personal injury" must be decided by the facts of each case. *Id.* In *Boone,* the Court held that where the victim was shaking, crying and "hysterical" immediately after the assault, but no evidence was offered to show any residual injury to the mind or nervous system, the evidence was insufficient to support a finding that the victim had suffered "serious personal injury." *Id.*

In the instant case, the State offered evidence tending to show that Ms. Medlin was depressed, ashamed and embarrassed and experienced nightmares, headaches and weight loss immediately following the assault. No evidence, however, was presented to show whether or for how long these problems persisted. Ms. Medlin stated that she did not seek treatment for any of these problems; and by the time of trial, the problems had, for the most part, resolved. The State, however, relies on the testimony of the victim indicating she quit her job two days after the assault and left her infant son in the care of her mother for approximately nine months following the rape to establish the proof necessary for a finding of a "serious personal injury." The State contends the facts of the present case are similar to those in *State v. Mayse,* 97 N.C. App. 559, 389 S.E.2d 585, *disc. review denied,* 326 N.C. 803, 393 S.E.2d 903 (1990), in which this Court held the State had met its burden of proof in establishing the existence of a "serious personal injury" where the victim testified she had dropped out of technical college and moved from the city where she lived following the rape. The case *sub judice,* however, is distinguishable from *Mayse.* The victim in *Mayse* testified that she had received professional help from a mental health center for her injuries and that her injuries continued at the time of trial. *Id.* at 563, 389 S.E.2d at 587. In the case at bar, no evidence was presented that the victim's injuries continued at the time of trial; in fact, the victim testified to the contrary stating that she was employed and had resumed caring for her son. Additionally, we note in *Mayse,* defendant displayed a hunting knife to the victim during the assault — conduct which alone would require the submission of the charge

STATE v. BAKER

[109 N.C. App. 557 (1993)]

of first degree rape to the jury. *Id.* at 562-63, 389 S.E.2d at 586-87.

We hold the mental injuries which the victim suffered in the present case represent the *"res gestae* results present in every forcible rape," and since the State "failed to offer proof that such injur[ies] extended for some appreciable time beyond the incidents surrounding the crime itself," the evidence was insufficient to support a jury finding that the victim suffered serious personal injuries necessary for a conviction of first degree rape..Therefore, the trial court erred in denying defendant's motions to dismiss the charge of first degree rape. However, sufficient evidence of second degree rape was presented, and the cause must be remanded for entry of judgment on the charge of second degree rape.

[2] Defendant next contends "[t]he trial court erred by allowing the State to cross-examine the defendant about his addiction to drugs." We disagree.

Our review of the record in this case indicates that the victim and Ms. Brown both testified, without objection, that defendant appeared to be under the influence of drugs on the night of the rape. On direct examination, defense counsel asked defendant whether he had smoked marijuana or taken any drugs on that date. During cross-examination, the following exchange took place:

Q. And you on direct examination indicated that you had 4 beers and that you didn't smoke marijuana. Is that correct?

A. Yes, ma'm.

Q. You didn't have any other controlled substances?

A. No, ma'm.

Q. And didn't Mr. Dickerson [defense counsel] ask you that because you do have a drug problem, don't you, Mr. Baker?

MR. DICKERSON: Objection.

COURT: Overruled.

A. I'm clean now.

Q. On August 20 of 1990, did you have a drug problem?

A. Yes.

It is clear from the record that defendant "opened the door" to the inquiry concerning his drug use on direct examination. The trial court then properly allowed the State to follow up on his testimony during cross-examination. *See State v. McKinney*, 294 N.C. 432, 241 S.E.2d 503 (1978). Defendant's argument is meritless.

[3] Finally, defendant contends it was error for the trial court to sentence him to prison for a term of twenty years for the offense of second degree sexual offense without finding any aggravating factors. We agree.

Second degree sexual offense is a Class D felony carrying a presumptive sentence of twelve years. N.C. Gen. Stat. §§ 14-27.5 & 15A-1340.4(f). During the sentencing hearing, defense counsel incorrectly advised the trial court that the presumptive sentence for this offense was twenty years. Based upon counsel's advice, the trial judge entered a judgment sentencing defendant to twenty years without finding any aggravating factors. As the State concedes, a trial court can only impose a sentence in excess of the presumptive term after first finding aggravating and mitigating factors and finding that the factors in aggravation outweigh those in mitigation. N.C. Gen. Stat. § 15A-1340.4(b). Therefore, the case must be remanded for resentencing on the charge of second degree sexual offense.

No error in defendant's trial on 91 CrS 1753, but remanded for resentencing.

Judgment vacated as to first degree rape in 90 CrS 7948, but remanded for entry of judgment on the charge of second degree rape.

Judges WELLS and ORR concur.