STATE OF NORTH CAROLINA v. STEVEN MARK FINNEY

No. 258A03

(Filed 6 February 2004)

**1. Evidence— hearsay—residual exception—unavailability of witness**

The trial court erred in a first-degree rape case by admitting the hearsay testimony of a detective as to statements allegedly made to him by the victim under the residual exception of .N.C.G.S. § 8C-1, Rule 804(b)(5) based on the erroneous conclusion that the victim was unavailable to testify, because the trial court failed to provide sufficient encouragement to the victim and failed to adequately explain to her that her testimony was essential to the constitutionality of the proceedings.

**2. Evidence— hearsay—unavailable witness—testimony given under oath**

The trial court erred in a first-degree rape case by refusing to allow defendant to introduce the victim's voir dire testimony in which the victim blamed her fragile emotional state on the harassment leveled at her by the district attorney rather than her alleged rape by defendant because: (1) the State relied on the victim's mental injury to support a conviction of first-degree rape; (2) the victim was deemed an unavailable witness; and (3) the testimony was admissible under Rule 804(b)(1) when the victim gave the testimony under oath during voir dire and the State was permitted an opportunity to examine the victim concerning this testimony.

**3. Rape— first-degree—instruction—serious injury**

The trial court did not commit plain error by its jury instruction on the serious personal injury element of first-degree rape, because: (1) the instruction comported with the instruction provided in the pattern jury instructions; (2) the instruction tracked the language provided in opinions from our Supreme Court; (3) the instruction translated the substantive requirements for the jury to conclude that the victim suffered a serious mental injury from the rape; and (4) there was no evidence that the instruction constituted a miscarriage of justice or was likely to cause the jury to reach a different verdict.

Justice EDMUNDS concurring in result.

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 157 N.C. App. 267, 581 S.E.2d 764 (2003), finding no error after appeal of a judgment entered 16 October 2001 by Judge James U. Downs in Superior Court, Henderson County. Heard in the Supreme Court 8 December 2003.

*Roy Cooper, Attorney General, by David N. Kirkman, Assistant Attorney General, for the State.*

*Miles & Montgomery, by Mark Montgomery and Lisa Miles for defendant-appellant.*

WAINWRIGHT, Justice.

On 22 January 2001, Steven Mark Finney (defendant) was indicted for first-degree rape. The indictment alleged that on 23 November 2000, defendant raped his wife, Virginia Finney (victim). Defendant was tried before a jury at the 15 October 2001 Criminal Session of Superior Court, Henderson County. The evidence at trial tended to show the following: On the night in question, defendant came home late. Defendant was drunk and a quarrel occurred between defendant and his wife. After a lengthy and emotional argument, defendant forced his wife into having sex against her wishes.

On 16 October 2001, the jury found defendant guilty of first-degree rape. The trial court sentenced defendant to 307-378 months in prison. On appeal, a unanimous panel of the Court of Appeals found no error in defendant's trial and sentence. *State v. Finney*, 157 N.C. App. 267, 581 S.E.2d 764 (2003). On 15 May 2003, defendant filed a notice of appeal in this Court based on defendant's constitutional right to confrontation. We granted the State's motion to dismiss the notice of appeal, but acted *ex mero motu* to allow discretionary review of three issues presented in this case.

[1] First, defendant argues that the trial court erred in admitting the hearsay testimony of Detective W.C. Harper as to statements allegedly made to him by the victim, who the trial court deemed "unavailable" to testify. Harper's testimony was admitted under the "residual" exception to the hearsay rule. *See* N.C.G.S. § 8C-1, Rule 804(b)(5) (2003).

During the trial, the prosecutor, Corey Ellis, called the victim, Virginia Finney, to testify on behalf of the State. Finney testified as follows:

STATE v. FINNEY

[358 N.C. 79 (2004)]

Q. Will you please tell us your name.

A. (No response)

Q. Are you able to hear my question?

A. (No response)

Q. Can you understand what I'm trying to ask you?

A. (No response)

Q. Are you Virginia Vaughn Finney?

A. (No response)

THE COURT: Sheriff, take the jury to the jury room for just a moment, please.

(JURY OUT)

THE COURT: Ms. Finney. Ms. Finney, are you able to hear me? Answer up, yes or no. The jury is out of the courtroom now, Ms. Finney. I need to know from you, are you going to testify in this case, or not.

A. I do not wish to, to testify.

MR. ELLIS [PROSECUTOR]: May I ask a few questions in an attempt, Your Honor?

THE COURT: You may try.

VOIR DIRE EXAMINATION OF MS. FINNEY BY MR. ELLIS:

Q. Ms. Finney, do you not wish to testify because you have problems recalling what happened to you.

A. Yes.

Q. I have a—

A. I've been threatened by the D.A. (Inaudible)

THE COURT: You've been threatened by whom?

A. The D.A., Corey Ellis. (crying)

THE COURT: You've been threatened by the D.A.

A. Yes.

THE COURT: How has the D.A. threatened you, Ms. Finney?

**STATE v. FINNEY**

[358 N.C. 79 (2004)]

A. I was doing good.

THE COURT: Do what?

A. I was doing a lot better.

THE COURT: You're going to have to slow down here.

A. (Crying) And I don't want to talk about it no more please. I just don't want to remember anything anymore. I don't want to go through this.

I've been informed by the D.A. if I did not then I would be arrested, and I've been arrested at my work; and I lost my job and everything (inaudible). I was trying to go on with my life until Corey Ellis started aggravating me and my family constantly. They put me in a room, closed the door and would not let me out. I don't want to know anymore. I just want to get out of here.

I do not wish to testify and I want to leave. And if I try to leave I'm arrested. I am harassed constantly. And I want out. (Crying)

THE COURT: Well, Mr. Ellis, I believe it's time to make a decision about whether or not you're going to have a witness.

A. (Crying) He's the cause of me losing my job, sir.

Q. Ms. Finney, were you served with a subpoena at your work?

A. Yes, sir, by you.

Q. And is it your belief that you lost your job because you got a subpoena at work?

A. Yes, sir, it is.

Q. Is that one of the reasons you're angry with me?

A. Part of it, because you aggravate me all the time. I don't wish to talk to you anymore.

Q. Can I ask you to look at what I've marked as State's Exhibit 10, ma'am. I marked this piece of paper as State's 10. Can you take a look at that and tell me if you've seen that before. I've laid it there on your knee, Ms. Finney, State's Exhibit 10, will you please take a look at it.

A. (No response)

Q. Is State's Exhibit 10 a written summation of what's happened to you?

A. (No response)

Q. Was State's Exhibit 10 written by you?

A. (No response)

MR. ELLIS: Well, Judge, I don't know that there's anything more I can do with this witness. I will tell the Court that without this witness's testimony I'll seek to have a medical provider testify pursuant to 803 for statements made for the purpose of medical diagnosis and treatment.

The trial court eventually concluded that Virginia Finney was an unavailable witness. The trial court subsequently permitted Detective W.C. Harper to read a statement to the jury that he took from Mrs. Finney describing the alleged rape.

The statement was admitted under Rule 804(b)(5), the "residual" hearsay exception, which states:

> (b) *Hearsay exceptions.*—The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> . . . .
>
> (5) Other Exceptions.—A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence.

N.C.G.S. § 8C-1, Rule 804(b)(5).

The first requirement for a statement to be admitted under the residual hearsay exception is that the declarant be unavailable as a witness. N.C.G.S. § 8C-1, Rule 804(b). A declarant is unavailable if she "[p]ersists in refusing to testify concerning the subject matter of [her] statement despite an order of the court to do so." N.C.G.S. § 8C-1, Rule 804(a)(2).

STATE v. FINNEY

[358 N.C. 79 (2004)]

In the present case, the witness never definitively refused to testify and certainly did not persist in a refusal to testify in the manner contemplated by Rule 804. Indeed, during her voir dire by the State when she was originally called as a witness, Mrs. Finney never indicated an unequivocal persistence in refusing to testify. Rather, Mrs. Finney was responsive and cooperative in answering the trial court's questions. In essence, Mrs. Finney told the trial court that she did not "wish" to testify due to her alleged harassment by the prosecutor. Even when the trial court appeared to close the voir dire by telling the prosecutor, "I believe it's time to make a decision about whether or not you're going to have a witness," Mrs. Finney provided an unprompted response that, "He's [the prosecutor] the cause of me losing my job, sir." This is further evidence that Mrs. Finney was capable of being a responsive witness. While Mrs. Finney may have been a hostile witness for the State, we cannot conclude based on the record before us that sufficient inquiry was made by the trial court to determine that Mrs. Finney would persist in refusing to testify.

We also note that the State concedes that the trial court and Court of Appeals committed various legal errors in considering the admission of Harper's hearsay testimony. Specifically, the State acknowledges that: (1) the trial court made inadequate findings as to the hearsay statement's reliability as required under the "residual" hearsay exception analysis and improperly referred to the hearsay statement's consistency with other statements and testimony rather than the particularized guarantees of trustworthiness found in the statement and circumstances at the time the statement was made; (2) the statement in the Court of Appeals' opinion that "testimony was admitted as an exception to the hearsay rule and, consequently, a right of confrontation does not apply," is in conflict with *Idaho v. Wright*, 497 U.S. 805, 111 L. Ed. 2d 638 (1990) because the "residual" hearsay exception in this case is not "firmly rooted" and only where an exception is "firmly rooted" will the rights of confrontation and cross examination be foregone; and (3) the Court of Appeals' opinion improperly referenced the hearsay statement's consistency with other statements admitted at trial where the proper analysis is whether the statement to the detective, standing alone, was inherently trustworthy.

Additionally, we note that the transcript of the trial proceedings indicates that Virginia Finney was present in the courtroom at various stages of the proceedings. Indeed, immediately after the verdict was read, Mrs. Finney asked the trial court, "Judge, may I say some-

thing as being the victim?" The court responded, "No, ma'am, not now." Mrs. Finney also testified on behalf of defendant during the sentencing proceeding as follows:

He [defendant] needs help. I've written to him to support him with a Christian background. There's a reason why I could not testify the other day. I have worked hard this year trying to find jobs, sir. I went out—after the episode happened, I met with Mr. Harper on two occasions and I never heard from him after that. There was no police officers checked on me to see if I was okay, if I needed anything.

. . . .

I want to get to the reason of why I could not testify. Corey Ellis [the prosecutor] pulled me into his office and closed the door, and I felt like I was trapped in a box. His secretary put her hand up over the door and they read the article from Florida. It was nothing that was stated today. It was how the girl was tortured. And he said, "Now can you imagine your life?" And I went all hysterical.

. . . .

Corey Ellis has threatened to arrest me. He brought me in the other day and told me if I didn't show up, he would arrest me. Every which way I turned I'm going to be arrested if I'm not here. I did not want to testify for a lot of these reasons. I did not want this trial to go on any longer. I feel like that night happened because of Steve's drinking problem. And if he had counseling and help, he might could get through some of that, some of the problems he's had.

. . . .

I feel like these women that he had encounters with that's his single life. That has nothing to do with my case, or what with us. Steve was a decent person, unless he was drinking. I would just recommend—I wanted to talk and then you told me to sit down. . . .

. . . .

And I just feel like that Corey Ellis—I went back to my job after I was subpoenaed and I was fired from my job because of this case. And Corey Ellis caused this to happen to me. They said if I had not—And ever since that day in that office, I've had to

take medication and I've not taken any in two days now. And I just feel like this—this has been an unfair situation.

I'm the one that's being treated like a criminal. I'm the one told to shut up. I'm the one that—they have not stood by me like they should have if I was the victim. I had to go out and hire my own attorney. I do have the doctor's statements. I apologize that I don't have them for when I've been on the medication. When it started was after Corey Ellis went after me.

. . . .

I understand, sir. I understand what you're saying. I have had no deputies to come by my house to check on me or anything. Like—if you thought a rape victim had been raped or whatever, wouldn't you have deputies watching, or somebody around. They told me they can't be there 24 hours. I have heard nothing else from Walt Harper since the last time we met.

THE COURT: The person you accused was in jail at the time.

A. Yes, but that doesn't mean he could have friends or anybody around. You don't know.

THE COURT: Did you know how to get a hold of the officers?

A. I tried several times and he was always out of town or he was not there. The December 11th meeting I know that meeting did not happen, because that was my birthday, and I was out with one of my girlfriends. We had went to Greenville, South Carolina.

I could not testify the other day because I was escorted in and I was threatened. My mother is 74 years old and she doesn't know a lot of this story that happened that night and she was put on the stand to testify. And we have not even hardly talked at all about it.

I have not even discussed it all with my son. My son just got out of prison and he's petrified of the court system as much as I am. And that's why I could not talk the other day. And I feel like that Corey Ellis and his staff have done me wrong. And now I don't have a job. I'm unemployed again.

This testimony shows that Mrs. Finney had specific reasons that she did not want to testify. This Court cannot conclude that Mrs. Finney's concerns could not have been erased with ample inquiry and encouragement by the trial court.

We also note that at one point during the State's case, the prosecutor apparently realized that Mrs. Finney was present in the courtroom. At the prosecutor's request, the trial court asked Mrs. Finney to come forward. The trial court then told her, "Ms. Finney, I'm ordering you to come to the witness stand." Mrs. Finney responded, "When my lawyer is present I will come. My lawyer's not here." The trial court asked Mrs. Finney again to take the stand and she again informed the trial court that she would not testify without her lawyer. After the trial court ascertained that Mrs. Finney's lawyer had the flu, the trial court concluded that Mrs. Finney was unavailable to testify. By all appearances from the record, Mrs. Finney was at this point indicating that she *would* testify if her lawyer was present.

Here, where the trial court failed to provide sufficient encouragement to Mrs. Finney and failed to adequately explain to her that her testimony was essential to the constitutionality of the proceedings, we cannot conclude that the trial court properly found that Mrs. Finney was unavailable to testify. Where, as here, a defendant's constitutional right to confrontation is at stake, we believe that the unavailability requirement in Rule 804 contemplates more than a brief or minimal examination by the trial court.

In sum, we conclude that the trial court erred in declaring Mrs. Finney unavailable and admitting Detective Harper's hearsay testimony under the "residual" hearsay exception in Rule 804(b)(5).

[2] Defendant next argues that the trial court erred in refusing to allow defendant to introduce Mrs. Finney's voir dire testimony in which she blamed her fragile emotional state on the harassment leveled at her by the district attorney. According to defendant, the State based its case for first-degree rape on the theory that Mrs. Finney sustained serious mental injury due to her rape by defendant. While serious injury can be used to support a first-degree rape conviction, this element is not required for a conviction of second-degree rape. N.C.G.S. §§ 14-27.2, 14-27.3 (2003). Defendant sought to introduce Mrs. Finney's voir dire testimony to show that her mental injuries were caused by the district attorney's harassment in trying to get her to testify rather than her alleged rape by defendant.

During the charge conference, after the close of the evidence, the following exchange transpired:

MR. GOLDSMITH [DEFENSE ATTORNEY]: . . . . I would ask that the Court play Ms. Finney's testimony for the jury that was outside

the jury's presence yesterday. Because that goes directly to what type of mental or physical injury she was having.

The Court will recall—the Court elicited that testimony. She was under oath on the stand, the jury didn't hear it. I would like for the jury to hear it.

THE COURT: Call her and have her testify.

MR. GOLDSMITH: She's already testified to it, Judge.

THE COURT: Not in front of the jury, she hasn't. And that's no evidence for the jury. I simply was making some determination as to whether or not she was going to say anything. I couldn't care less what it would be, yeah or nay.

MR. GOLDSMITH: My argument would be it would go to explaining the mental injury that she supposedly has had.

THE COURT: The Court takes notice that woman is right now in the courtroom. I'll let you reopen your case and call her.

MR. GOLDSMITH: I understand. Thank you, Judge, for hearing me.

THE COURT: Do you want to call her?

MR. GOLDSMITH: Judge, I do not. Thank you.

At this point in the proceedings, the trial court had already made a determination that Mrs. Finney was unavailable as a witness. As such, the opportunity for defendant to call her as a witness was of no use. Moreover, the trial court had already permitted the State to introduce hearsay testimony involving Mrs. Finney's statement to the police.

Mrs. Finney's voir dire testimony was clearly admissible under an established hearsay exception. Where a witness is deemed unavailable, hearsay testimony is admissible if based on "[t]estimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." N.C.G.S. § 8C-1, Rule 804(b)(1). In the present case, the trial court had already declared that Mrs. Finney was an unavailable witness. Mrs. Finney had given testimony under oath during voir dire. Defendant sought to admit this sworn testimony as rebuttal evidence against the State. The State was permitted an opportunity to examine Mrs. Finney concerning this testimony.

Accordingly, Mrs. Finney's voir dire testimony was admissible under Rule 804(b)(1).

We therefore conclude that the trial court erred in failing to allow presentation of Mrs. Finney's voir dire testimony to the jury.

[3] Finally, defendant argues that the trial court erred in its jury instruction on the serious injury element of first-degree rape. The trial court gave the following instruction:

> [S]erious personal injury is any type of physical injury that causes great pain and suffering. Serious mental injury is—is that injury to the mind or to the nervous system that not only re-sults—or it not only occurs as a result of the trauma of the alleged vaginal—forcible non-consensual vaginal intercourse, but it also is that type of mental injury that extends for some ap-preciable time beyond the incident surrounding the crime itself.

When the jury later asked for clarification on the difference between first-degree and second-degree rape, the trial court used a similar instruction to the one given above.

We initially note that defendant failed to make any objection to the instruction given. Accordingly, our analysis of this issue is limited to a review for plain error. *State v. Sexton*, 357 N.C. 235, 238, 581 S.E.2d 57, 59 (2003). "[T]o reach the level of 'plain error' . . . , the error in the trial court's jury instructions must be 'so fundamental as to amount to a miscarriage of justice or which probably resulted in the jury reaching a different verdict than it otherwise would have reached.' " *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993) (quoting *State v. Bagley*, 321 N.C. 201, 213, 362 S.E.2d 244, 251 (1987), *cert. denied*, 485 U.S. 1036, 99 L. Ed. 2d 912 (1988)).

The trial court's instruction in the present case comports with the instruction provided in our pattern jury instructions. N.C. P.J.I. 207.10, fn. 3 (2002). Moreover, the trial court's instruction tracks the language provided in opinions from this Court. In *State v. Boone*, we stated:

> In order to support a jury finding of serious personal injury because of injury to the mind or nervous system, the state must ordinarily offer proof that such injury was not only caused by the defendant but that the injury extended for some apprecia-ble time beyond the incidents surrounding the crime itself. Obviously, the question of whether there was such mental injury

as to result in "serious personal injury" must be decided upon the facts of each case.

307 N.C. 198, 205, 297 S.E.2d 585, 590 (1982), *overruled on other grounds by State v. Richmond,* 347 N.C. 412, 495 S.E.2d 677, *cert. denied,* 525 U.S. 843, 142 L. Ed. 2d 88 (1998).

We later clarified our holding in *Boone* as follows:

*Boone* holds that in order to prove a serious personal injury based on mental or emotional harm, the State must prove that the defendant caused the harm, that it extended for some appreciable period of time beyond the incidents surrounding the crime itself, and that the harm was more than the "*res gestae*" results present in every forcible rape. *Res gestae* results are those "so closely connected to [an] occurrence or event in both time and substance as to be a part of the happening."

*State v. Baker,* 336 N.C. 58, 62-63, 441 S.E.2d 551, 554 (1994) (citation omitted).

The trial court's instruction fully translated the substantive requirements for the jury to conclude that the victim suffered a serious mental injury from the rape. Moreover, our thorough review of the record provides no credible evidence that the jury instruction on serious injury constituted a "miscarriage of justice" or was likely to cause the jury to reach a different verdict. *Collins,* 334 N.C. at 62, 431 S.E.2d at 193. In sum, we conclude that the trial court's instruction in the present case did not constitute plain error.

Accordingly, we find error in the present case only as to the first two issues presented.

The decision of the Court of Appeals is reversed and this case is remanded to that court for further remand to the Superior Court, Henderson County, for a new trial.

REVERSED AND REMANDED FOR A NEW TRIAL.

Justice EDMUNDS concurring in the result.

I respectfully disagree with the majority's analysis of the instruction pertaining to serious personal injury. The majority correctly states that this Court discussed the requirements for proving serious personal injury based on mental or emotional harm in a first-degree

STATE v. FINNEY

[358 N.C. 79 (2004)]

rape case in *State v. Boone*, 307 N.C. 198, 297 S.E.2d 585 (1982), *overruled on other grounds by State v. Richmond*, 347 N.C. 412, 495 S.E.2d 677, *cert. denied*, 525 U.S. 843, 142 L. Ed. 2d 88 (1998), then refined that analysis in *State v. Baker*, 336 N.C. 58, 441 S.E.2d 551 (1994). In *Baker*, we set out two elements required to establish this type of serious personal injury. "What is required is that the mental injury extend for some appreciable time beyond the incidents surrounding the rape and that it is a mental injury beyond that normally experienced in every forcible rape." *Id.* at 64, 441 S.E.2d at 554. Unfortunately, the pattern jury instruction, citing *Boone* but not *Baker*, directs the trial court to instruct the jury that it need find only that defendant caused the injury and that the injury extended some appreciable time beyond the events making up the offense. 1 N.C.P.I.—Crim. 207.10 n.3 (2002). Thus, the pattern instruction has omitted the second prong required by *Baker*, that the harm exceed that found in other forcible rape cases. The Court of Appeals has perpetuated this error. *See State v. Easterling*, 119 N.C. App. 22, 40, 457 S.E.2d 913, 923, *disc. rev. denied*, 341 N.C. 422, 461 S.E.2d 762 (1995) ("We do not read *Boone* as placing an additional burden on the State to show a mental injury must be more than that normally experienced in every forcible rape in addition to showing the mental injury extended for some appreciable time, as defendant suggests.").

The instruction in the case at bar, apparently following the pattern, required the State to establish that the injury was extensive in time, but it did not require the State to prove that the injury exceeded that inherent in all forcible rapes. To the contrary, the portion of the instruction quoted in the majority opinion can be read to suggest that serious mental injury arises as a result of all non-consensual vaginal intercourse. "Having chosen forcible first-degree rape as its theory of prosecution and having brought defendant to trial, the State was bound to prove all of the material elements of that charge . . . ." *State v. Williams*, 318 N.C. 624, 628, 350 S.E.2d 353, 356 (1986). The instruction given here erroneously relieved the State of its burden of proving a material element of forcible first-degree rape. Because of our disposition of other issues in this case, it is unnecessary to determine separately whether the error was prejudicial. Nevertheless, the pattern instruction should be corrected.