STATE OF NORTH CAROLINA
v.
THOMAS DURHAM
No. COA08-464.
Court of Appeals of North Carolina.
Filed February 17, 2009.
This case not for publication
Attorney General Roy A. Cooper, III, by Assistant Attorney General Allison A. Angell, for the State.
Kimberly P. Hoppin, for defendant-appellant.
JACKSON, Judge.
Thomas Durham ("defendant") appeals from a conviction of felony conversion by a bailee and an order to pay $1,566.37 in restitution. For the reasons stated below, we hold no error as to the denial of defendant's motion to dismiss the felony conversion by a bailee charge and remand for a new hearing as to the amount of restitution.
On 26 August 2006, defendant went to Leith Auto Park East ("Auto Park") in Wendell, North Carolina to purchase an automobile. Defendant contacted John Durham ("Durham"), who is not related to defendant, in Auto Park's financing department and submitted a credit application to finance the transaction. After defendant received preliminary financing approval from two lenders, Consumer Portfolio Services ("CPS"), and Regional Acceptance ("Regional"), defendant looked at the automobiles in Auto Park's inventory that were within the amount of defendant's preliminary credit approval. Defendant selected a 2006 Dodge Charger ("the Charger") from Auto Park's inventory and completed the required paperwork with Durham. Included within these documents was a standard financing document called the Conditional Delivery Agreement ("the Agreement").
The Agreement provided (1) the delivery of the Charger to defendant would be allowed on the condition that a lender agrees to finance the transaction; (2) the return of the Charger to Auto Park would be required if a lender would not finance the purchase; (3) responsibility for any costs associated with retrieving the Charger would be borne by defendant; and (4) notice to defendant would be sufficient if made by telephone or by prepaid, first-class mail deposited with the United States Postal Service addressed to defendant's last-known address. Defendant had an opportunity to review the Agreement, and after signing it, defendant drove the Charger home. When defendant left Auto Park, the Charger had 22,327 miles and a trade-in value of $18,025.00.
The two potential lenders, CPS and Regional, reviewed defendant's financing application prior to extending credit. After reviewing defendant's paperwork, CPS had concern with the amount of taxes defendant claimed he paid in relation to his reported income. Therefore, on or about 6 September 2006, CPS contacted Durham and informed him that CPS would not finance defendant's purchase of the Charger. Approximately one week later, a representative from Regional contacted defendant to confirm receipt of defendant's paperwork by Regional. The representative repeatedly had tried to contact defendant to conduct a customer interview, but was unable to do so. The representative was able to contact defendant's wife, but she stated that defendant had not purchased an automobile. As a result, Vincent Motto ("Motto"), Regional's branch manager, believed defendant's pending purchase was a "straw" purchase for the benefit of someone else. Regional then contacted Auto Park and refused to finance defendant's purchase of the Charger.
On 15 September 2006, after a week of failed attempts, Durham finally was able to reach defendant to inform him that neither lender was willing to finance the transaction and that defendant needed to return the Charger to Auto Park. Defendant stated that everything was fine, that he had spoken with the bank, and that financing had been arranged. Defendant then abruptly hung up the phone. Durham called again and explained that the financing had not been arranged. Defendant said that the Charger was his, that he had signed the paperwork, and that everything was fine.
Over the next several weeks, Durham contacted defendant approximately nine times and communicated as much as he could before defendant hung up on him. Durham explained that the purchase was incomplete because the lenders would not finance the transaction, even though defendant had signed the paperwork. Durham further explained that he would have to call the police if defendant refused to return the Charger to Auto Park. Defendant failed to do so, and on 20 October 2006, Durham met with Officer Marty Barnes ("Officer Barnes") to fill out a stolen vehicle report.
Officer Barnes contacted defendant to inform him that he should return the Charger by 5:00 p.m. on 20 October 2006 or else a warrant would be taken out for defendant's arrest. Defendant told Officer Barnes that the Charger had been in a wreck and that he would return the Charger on 23 October 2006. During the evening of 20 October 2006, Officer Barnes contacted Auto Park to determine whether defendant had returned the Charger. When Officer Barnes learned that the Charger had not been returned, he obtained a warrant for defendant's arrest and entered the Charger's information on a statewide database for "wanted" vehicles.
Corporal Jones of the Orange County Sheriff's Department received a copy of defendant's arrest warrant, and while on duty, he observed an automobile matching the Charger's description in defendant's driveway. Corporal Jones knocked on the door, and when defendant answered, Corporal Jones arrested defendant pursuant to the arrest warrant. The Charger then was towed to a storage lot.
While in defendant's possession, the Charger received damage to the left rear-quarter panel, a bent wheel, and bald and uneven tires. The Charger also was driven approximately 9,000 miles during the two months defendant possessed it. The estimated cost of repair was $1,700.00.
On 11 September 2007, defendant's case came on for trial. After hearing the State's evidence, defendant made a motion to dismiss. The trial court denied defendant's motion, and the jury subsequently found defendant guilty of felonious conversion by a bailee. On 12 September 2007, the trial court entered an order committing defendant to a term of five to six months imprisonment. The trial court suspended the sentence, placed defendant on supervised probation for thirty months, and ordered defendant to pay $1,566.37 in restitution. On 26 September 2007, defendant filed written notice of appeal.
On appeal, defendant first argues that the trial court erred by denying defendant's motion to dismiss at the close of the evidence because the evidence was insufficient to establish that defendant committed felony conversion by a bailee. Specifically, defendant argues that there was insufficient evidence of defendant's intent to convert the property. We disagree.
In order to survive a motion to dismiss based upon the sufficiency of the evidence, the State must present substantial evidence of each essential element of the charged offense and of defendant's being the perpetrator of the offense. State v. Fritsch, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Blake, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (internal citations and quotation marks omitted). "'If there is more than a scintilla of competent evidence to support allegations in the warrant or indictment, it is the court's duty to submit the case to the jury.'" State v. Everhardt, 96 N.C. App. 1, 11, 384 S.E.2d 562, 568(1989), aff'd, 326 N.C. 777, 392 S.E.2d 391 (1990) (quoting State v. Horner, 248 N.C. 342, 344-45, 103 S.E.2d 694, 696 (1958)). The court must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences that can be drawn from the evidence. Fritsch, 351 N.C. at 378-79, 526 S.E.2d at 455.
Defendant was convicted of felony conversion by a bailee pursuant to North Carolina General Statutes, section 14-168.1. Section 14-168.1 provides that
[e]very person entrusted with any property as bailee, lessee, tenant or lodger, or with any power of attorney for the sale or transfer thereof, who fraudulently converts the same, or the proceeds thereof, to his own use, or secretes it with a fraudulent intent to convert it to his own use, shall be guilty of a Class 1 misdemeanor.
If, however, the value of the property converted or secreted, or the proceeds thereof, is in excess of four hundred dollars ($400.00), every person so converting or secreting it is guilty of a Class H felony. In all cases of doubt the jury shall, in the verdict, fix the value of the property converted or secreted.
N.C. Gen. Stat. § 14-168.1 (2007). A bailment has been defined as
[a] delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title.
Black's Law Dictionary 151-52 (8th ed. 2004). We previously have held that felonious conversion by a bailee,
like larceny and embezzlement, occurs when a defendant offends the ownership rights ofanother. The statute applies to certain specified relationships involving an owner of property and a non-owner, e.g., bailee, lessee, and tenant. Moreover, an essential component of the crime is the intent to convert or the act of conversion, which by definition requires proof that someone other than a defendant owned the relevant property.
State v. Woody, 132 N.C. App. 788, 789-90, 513 S.E.2d 801, 803 (1999). And, as is the case with embezzlement, the State may prove its case either by direct evidence of intent or by showing such facts and circumstances from which such intent reasonably may be inferred. See State v. McLean, 209 N.C. 38, 40, 182 S.E. 700, 701-02 (1935).
In the case sub judice, defendant "offend[ed] the ownership rights of another" by failing to return the Charger to Auto Park notwithstanding approximately two months of repeated notifications to return the property. See Woody, 132 N.C. App. at 789-90, 513 S.E.2d 803. Although defendant received preliminary approval for financing from two prospective lenders, ultimately neither lender agreed to extend credit to defendant. Therefore, the transaction remained incomplete, defendant never purchased the Charger, and Auto Park retained ownership of the Charger. During a period of approximately two months, Durham repeatedly called defendant, explained that the purchase was incomplete, and told defendant that he must return the Charger. Durham further notified defendant that the police would be called if defendant failed to return the property. Officer Barnes gave defendant a final notification and warning that an arrest warrant would issue if defendant did not return the Charger by 5:00 p.m. on 20 October 2006. Defendant was provided with repeated demands for the Charger's return and explanations that defendant did not own the Charger because the prospective lenders would not finance the purchase. Nevertheless, defendant refused to return Auto Park's property.
Accordingly, we hold that the State presented substantial circumstantial evidence of defendant's fraudulent intent to convert property belonging to another. Because the Charger had a trade-in value of $18,025.00, significantly more than the statutory requirement of $400.00, the State presented substantial evidence that the conversion was felonious. See N.C. Gen. Stat. § 14-168.1 (2007). "Any weakness in the State's evidence . . . was for the jury to consider." State v. Harris, __ N.C. App. __, __, 657 S.E.2d 701, 709 (2008). The trial court did not err in denying defendant's motion to dismiss the felony conversion by a bailee charge.
Next, defendant argues that the trial court erred by ordering defendant to pay $1,566.37 in restitution, when this amount was not supported by the evidence. We agree.
Preliminarily, we note that a trial court's entry of an award of restitution is deemed to be preserved for appellate review even when defendant fails to object to the order specifically. See N.C. Gen. Stat. § 15A-1446(d)(18) (2007); State v. Shelton, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (citing State v. Reynolds, 161 N.C. App. 144, 149, 587 S.E.2d 456, 460 (2003)). "Regardless of whether restitution is ordered or recommended by the trial court, the amount must be supported by the evidence." Statev. Daye, 78 N.C. App. 753, 757, 338 S.E.2d 557, 560, disc. rev. allowed, 316 N.C. 554, 344 S.E.2d 11, aff'd, 318 N.C. 502, 349 S.E.2d 576 (1986) (per curiam). See also N.C. Gen. Stat. § 15A-1340.36(a) (2007). This evidence may be produced during trial or sentencing. Daye, 78 N.C. App. at 756, 338 S.E.2d at 560 (citing State v. Killian, 37 N.C. App. 234, 238, 245 S.E.2d 812, 815-16 (1978)). However, "unsworn statements of the prosecutor . . . do[] not constitute evidence and cannot support the amount of restitution recommended." State v. Buchanan, 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). See also State v. Replogle, 181 N.C. App. 579, 583-84, 640 S.E.2d 757, 760-61 (2007) (restitution order in an involuntary manslaughter prosecution was improper because the only information as to the amount of restitution owed to the victim's father was provided by the prosecutor and did not constitute evidence).
North Carolina General Statutes, section 15A-1340.34(b) provides that "[i]f the defendant is placed on probation or post-release supervision, any restitution ordered under this subsection shall be a condition of probation as provided in [section] 15A-1343(d) or a condition of post-release supervision as provided in [section] 148-57.1." N.C. Gen. Stat. § 15A-1340.34(b) (2007).
In the case sub judice, defendant was ordered to pay restitution pursuant to North Carolina General Statutes, section 15A-1343(d). In pertinent part, section 15A-1343(d) provides that
[a]s a condition of probation, a defendant may be required to make restitution or reparationto an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant. When restitution or reparation is a condition imposed, the court shall take into consideration the factors set out in [section] 15A-1340.35 and [section] 15A-1340.36.
N.C. Gen. Stat. § 15A-1343(d) (2007) (emphasis added). Section 15A-1340.35 provides the basis for restitution and, in relevant part, states that
(a) [i]n determining the amount of restitution, the court shall consider the following:
. . . .
(2) In the case of an offense resulting in the damage, loss, or destruction of property of a victim of the offense:
a. Return of the property to the owner of the property or someone designated by the owner; or
b. If return of the property under sub-subdivision (2)a. of this subsection is impossible, impracticable, or inadequate:
1. The value of the property on the date of the damage, loss, or destruction; or
2. The value of the property on the date of sentencing, less the value of any part of the property that is returned.
N.C. Gen. Stat. § 15A-1340.35(a)(2) (2007). Finally, section 15A-1340.36 allows the trial court to make certain determinations relevant to restitution such as defendant's ability to pay and appropriate timing for restitution to be paid. See N.C. Gen. Stat. § 15A-1340.36 (2007). In the case sub judice, the trial court ordered restitution in the amount of $1,566.37 consisting of $606.37 for repairs, $210.00 for towing, and $750.00 for mileage. At sentencing, the State made the following request for restitution:
We are asking for restitution, and the amount that we have, we have an estimate of repair that's $1,745.40. And Miss Kasper spoke with John Durham, and I believe they charge [fifteen] cents per mile when they lease a vehicle, he felt that was appropriate for the extra miles, and it ended up being a total of $3,260.60 in restitution.
During sentencing, defendant offered evidence that his insurance company estimated the cost to repair at approximately $606.00. At trial, Durham testified that the Charger "had seen a hard 9,000 miles" and that "[i]t had damage around the left rear quarter panel." Durham estimated the body-damage to be approximately $1,700.00. Furthermore, Corporal Jones testified at trial that the car was towed to a storage lot, and supporting documentation for the costs associated with towing and storage was offered at sentencing showing an amount of $210.00. However, the only purported evidence which appears regarding a charge for extra miles came from the prosecutor. As such, without other evidence regarding damage resulting from the extra miles, we hold that the trial court erred in ordering a restitution award that included the extra miles. See Buchanan, 108 N.C. App. at 341, 423 S.E.2d at 821; Replogle, 181 N.C. App. at 583-84, 640 S.E.2d at 760-61. We note that the trial court "may order [defendant] to pay [Auto Park] a sum no higher than the largest figure contained in the evidence representing fair market value [of the loss]." State v. Maynard, 79 N.C. App. 451, 454, 339 S.E.2d 666, 668 (1986). We remand this matter to the trial court for a new sentencing hearing as to restitution during which the trial court may receive relevant evidence, including evidence as to mileage, to determine the amount of restitution in a manner consistent with this opinion.
No error in part, reversed and remanded in part.
Judges STEELMAN and STROUD concur.
Report per Rule 30(e).