IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-184

Filed: 4 February 2020

Buncombe County, Nos. 17 CRS 88785-86; 18 CRS 101

STATE OF NORTH CAROLINA

v.

REGINALD TREMAINE WILSON

Appeal by Defendant from Judgments entered 24 May 2018 by Judge Gary M.
Gavenus in Buncombe County Superior Court. Heard in the Court of Appeals 5
September 2019.

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Patrick S. Wooten, for the State.*

*Law Office of Kellie Mannette, PLLC, by Kellie Mannette, for defendant-appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Reginald Tremaine Wilson (Defendant) appeals from his convictions for
Possession with Intent to Sell or Deliver Cocaine (PWISD Cocaine), Felony Possession
of Cocaine, and attaining Habitual-Felon status. The evidence presented at trial and
Record before us tend to show the following:

On 3 August 2017, while patrolling on Old U.S. 70 in Buncombe County,
Officer Joseph Moore of the Black Mountain Police Department (Officer Moore)

observed a car driven by Defendant heading in the opposite direction. Officer Moore recognized Defendant and knew Defendant's driver's license was suspended. Officer Moore turned his patrol car around and activated his emergency equipment to begin a traffic stop of Defendant's vehicle. Rather than stop or slow down, Defendant accelerated away from Officer Moore and then turned off the road onto another street. Officer Moore continued his pursuit, and Defendant pulled into a parking lot of an apartment complex and parked his car. An unoccupied car was parked in the parking spot to the immediate left of Defendant's vehicle. Upon stopping, Defendant got out of his car. Officer Moore testified that in his experience it was very unusual for someone to get out of their vehicle when stopped for a traffic stop. Officer Moore testified a driver will normally stop quickly and remain in the vehicle.

As Defendant was getting out of his car, Officer Moore parked behind Defendant's car, got out of his vehicle, and ordered Defendant to return to his car; however, Defendant refused. Officer Moore attempted to approach Defendant, but Defendant moved around to the front of the other unoccupied parked car. Officer Moore repeated his command for Defendant to return to his car, and Defendant again refused. Officer Moore and Defendant briefly continued to argue back and forth about Defendant returning to his car. Defendant then began ducking down in front of the other unoccupied car.

At one point, Defendant stood up and stuck both hands into his waistband. Officer Moore unholstered his firearm and ordered Defendant to show his hands. Instead, Defendant "ducked to where [Officer Moore] couldn't see [Defendant] or his hands in front of a parked vehicle that he was in front of." Officer Moore testified, "[Defendant] eventually stood up and continued to argue, and then began to comply and walk back to the driver door of his vehicle." Officer Moore then tried to handcuff Defendant. However, after Officer Moore got one of Defendant's hands behind his back, Defendant refused to provide his other hand, resulting in a "tussle" between the two. At this point, Officer Moore's partner arrived and helped with detaining Defendant.

Officer Moore placed Defendant in the back of his patrol car and returned to Defendant's vehicle. Officer Moore "observed on the driver's seat a clear plastic baggie. Looked like a corner bag with an off-white, yellow substance in it." While Officer Moore continued searching Defendant's vehicle, the owner of the other unoccupied parked car came out of her apartment and asked Officer Moore if she could leave to go to work, which Officer Moore allowed. After the owner of the other parked car left, Officer Moore's partner pointed out "there was a large bag containing an off-white substance that was underneath" where the other car had been parked. Officer Moore testified this large bag was found near the front of where that car had been parked and where Defendant had been ducking down.

At Defendant's trial, Elizabeth Reagan (Agent Reagan), a Special Agent and Forensic Chemist with the North Carolina State Crime Laboratory, testified as an expert witness in forensic chemistry. Agent Reagan analyzed and weighed the contents of the two baggies. According to Agent Reagan, the corner bag contained .34 grams, plus or minus .02 grams, of cocaine base; whereas, the larger bag contained 11.19 grams, plus or minus .02 grams, of cocaine base. Both bags were admitted into evidence. Officer Moore also testified, based on his training and experience, a bag containing less than half a gram of cocaine is "a small amount, personal use amount."

In his own testimony, Defendant denied possessing any illegal substances on 3 August 2017. Defendant testified he was driving to his brother's residence and did not see any police vehicle until after he had already turned into his brother's apartment complex and gotten out of his car. Defendant denied ducking in front of the other vehicle and admitted only that he possessed a bottle of gin and that he had been drinking.

On 8 January 2018, Defendant was indicted on charges of PWISD Cocaine, Felony Possession of Cocaine, Maintaining a Vehicle or Dwelling Place for Keeping or Selling Cocaine, Driving While Driver's License Revoked, Resisting a Public Officer, and attaining Habitual-Felon status. Prior to trial, the State dismissed the charges of Maintaining a Vehicle or Dwelling Place for Keeping or Selling Cocaine, Driving While Driver's License Revoked, and Resisting a Public Officer.

Defendant's trial in Buncombe County Superior Court began on 22 May 2018. At the close of the State's evidence, Defendant, acting *pro se*, requested "all cases, cause, claim and/or charges be dissolved, dismiss, quash." Interpreting this request as a motion to dismiss for insufficiency of the evidence, the trial court denied the motion. At the close of Defendant's evidence and again prior to final judgment being entered, Defendant requested dismissal of his case. In each instance, the trial court interpreted Defendant's arguments as a motion to dismiss for insufficiency of the evidence and denied Defendant's motions.

On 23 May 2018, the jury returned verdicts finding Defendant guilty of PWISD Cocaine, Felony Possession of Cocaine, and, subsequently, attaining Habitual-Felon status. The following day, the trial court entered Judgments against Defendant, sentencing him as a prior-record level IV to active, consecutive sentences of 97 to 129 months' imprisonment for the PWISD-Cocaine conviction and 38 to 58 months' imprisonment for the Felony-Possession-of-Cocaine conviction.[1] Defendant gave Notice of Appeal in open court.

## Issue

---

[1] Defendant does not challenge his separate conviction for Felony Possession of Cocaine. Defendant also raises no independent challenge to his conviction of attaining Habitual-Felon status. Accordingly, we do not address those convictions on appeal.

The sole issue on appeal is whether there was sufficient evidence of an intent to sell or deliver cocaine to support the trial court's denial of Defendant's motions to dismiss the PWISD-Cocaine charge.

## Analysis

### I. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007) (citation omitted). "Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied." *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (2000) (citation and quotation marks omitted); *State v. Brown*, 310 N.C. 563, 566, 313 S.E.2d 585, 587 (1984) ("Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (citation omitted)). "If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion [to dismiss] should be allowed." *Fritsch*, 351 N.C. at 378, 526 S.E.2d at 455 (citation and quotation marks omitted). "In making its determination, the trial court must consider all evidence admitted, whether competent or incompetent, in the light most favorable to the State, giving the State

the benefit of every reasonable inference and resolving any contradictions in its favor." *State v. Rose*, 339 N.C. 172, 192, 451 S.E.2d 211, 223 (1994) (citation omitted). However, "[w]hether the State has offered such substantial evidence is a question of law for the trial court." *State v. McKinney*, 288 N.C. 113, 119, 215 S.E.2d 578, 583 (1975) (citations omitted).

## II. Motion to Dismiss

Defendant contends the trial court erred in denying his motions to dismiss the charge of PWISD Cocaine. "The offense of possession with intent to sell or deliver has the following three elements: (1) possession of a substance; (2) the substance must be a controlled substance; and (3) there must be intent to sell or distribute the controlled substance." *State v. Carr*, 145 N.C. App. 335, 341, 549 S.E.2d 897, 901 (2001) (citations omitted). Specifically, Defendant argues the State failed to demonstrate the third element—intent. Because Defendant does not challenge the remaining two elements of this offense, we limit our analysis to whether the State presented sufficient evidence of intent.[2]

"While intent may be shown by direct evidence, it is often proven by circumstantial evidence from which it may be inferred." *State v. Nettles*, 170 N.C. App. 100, 105, 612 S.E.2d 172, 175-76 (2005) (citation omitted). "Although quantity

[2] In particular, Defendant does not argue there was insufficient evidence he actually or constructively possessed either the smaller bag of cocaine found in his car or the larger bag found in the parking space where the other car had been parked.

of the controlled substance alone may suffice to support the inference of an intent to transfer, sell, or deliver, it must be a substantial amount." *Id.* at 105, 612 S.E.2d at 176 (citation and quotation marks omitted). This Court has recognized "the intent to sell or distribute may be inferred from (1) the packaging, labeling, and storage of the controlled substance, (2) the defendant's activities, (3) the quantity found, and (4) the presence of cash or drug paraphernalia." *Id.* at 106, 612 S.E.2d at 176 (citations omitted). "Moreover, our case law demonstrates that this is a fact-specific inquiry in which the totality of the circumstances in each case must be considered unless the quantity of drugs found is so substantial that this factor—by itself—supports an inference of possession with intent to sell or deliver." *State v. Coley*, 257 N.C. App. 780, 788-89, 810 S.E.2d 359, 365 (2018). "In 'borderline' or close cases, our courts have consistently expressed a preference for submitting issues to the jury[.]" *State v. Hamilton*, 77 N.C. App. 506, 512, 335 S.E.2d 506, 510 (1985) (citations omitted); *see also State v. Everhardt*, 96 N.C. App. 1, 11, 384 S.E.2d 562, 568 (1989) ("If there is more than a scintilla of competent evidence to support allegations in the warrant or indictment, it is the court's duty to submit the case to the jury." (citation and quotation marks omitted)), *aff'd*, 326 N.C. 777, 392 S.E.2d 391 (1990).

Here, the evidence reveals Defendant was in possession of cocaine contained in two packages: a corner bag containing .34 grams and a package containing 11.19 grams. "Although quantity of the controlled substance alone may suffice to support

the inference of an intent to transfer, sell, or deliver, it must be a substantial amount." *Nettles*, 170 N.C. App. at 105, 612 S.E.2d at 176 (citation and quotation marks omitted). This Court has previously held "a controlled substance's substantial amount may be determined by comparing the amount possessed to the amount necessary to constitute a trafficking offense." *Id.* at 106, 612 S.E.2d at 176. Possession of cocaine rises to the level of a trafficking offense where the amount possessed is at least 28 grams. *See* N.C. Gen. Stat. § 90-95(h)(3) (2019).

The amount of cocaine at issue in this case is thus less than half of the amount giving rise to a trafficking offense. It is also less than amounts our courts have previously recognized as a substantial amount beyond what a typical user would possess for personal use. *See State v. Morgan*, 329 N.C. 654, 660, 406 S.E.2d 833, 836 (1991) (an ounce or 28.3 grams); *State v. Davis*, 160 N.C. App. 693, 696, 586 S.E.2d 804, 806 (2003) (recognizing approximately 20 grams of cocaine "far exceeds the amount a typical user would possess for personal use"). However, within the context of our case law, it is not an insubstantial amount and well exceeds amounts that have previously been recognized as supportive of a PWISD-Cocaine conviction under appropriate circumstances. *See State v. Carr*, 122 N.C. App. 369, 373, 470 S.E.2d 70, 73 (1996) (indicating an intent to sell or deliver cocaine could be inferred from observations of defendant conversing through car windows with known drug users—one of whom was in possession of a pipe used for smoking crack cocaine—the

discovery of two pill bottles with nine rocks of crack cocaine in the defendant's possession, and the defendant's attempts to disguise his identity when questioned by police); *State v. Alston*, 91 N.C. App. 707, 711, 373 S.E.2d 306, 310 (1988) (finding no error in the defendant's conviction for possession with intent to sell where there were 4.27 grams of cocaine in twenty separate envelopes along with large rolls of currency); *State v. McNeil*, 165 N.C. App. 777, 783, 600 S.E.2d 31, 35 (2004) (indicating an intent to sell cocaine was established where there were 5.5 grams of crack cocaine, individually packaged in twenty-two pieces, placed in the corner of a paper bag), *aff'd*, 359 N.C. 800, 617 S.E.2d 271 (2005). *But see Nettles*, 170 N.C. App. at 106, 612 S.E.2d at 176 (possession of 1.2 grams of cocaine was insufficient to infer intent to sell or distribute); *State v. Battle*, 167 N.C. App. 730, 733, 606 S.E.2d 418, 421 (2005) (possession of 1.9 grams of cocaine was insufficient to infer intent to sell or distribute); *State v. Turner*, 168 N.C. App. 152, 154, 158-59, 607 S.E.2d 19, 21, 23-24 (2005) (evidence of ten rocks of cocaine in a tube weighing a total of 4.8 grams valued at approximately $150.00 to $200.00 was insufficient, standing alone, to support PWISD conviction); *In re I.R.T.*, 184 N.C. App. 579, 588, 647 S.E.2d 129, 137 (2007) (a single rock of crack cocaine wrapped in cellophane as well as $271.00 in cash on juvenile's person were insufficient to support adjudication for PWISD).

Assuming, without deciding, the amount of cocaine in Defendant's possession in this case was not such a substantial amount standing alone to support an inference

of Defendant's intent to sell or deliver, the amount of cocaine possessed by Defendant remains a significant amount and much more than has been typically recognized as for personal use. Thus, in weighing the totality of the circumstances in this case, the evidence Defendant possessed over 11 grams of cocaine is nevertheless an important circumstance.

Moreover, evidence of the packaging also supports an inference of intent to sell or deliver. The evidence reflected the cocaine was divided into two packages: one smaller corner bag indicative of packaging for personal use and the larger package containing the bulk (over 11 grams) of the cocaine. Defendant's actions further support an inference of an intent to sell and distribute. Defendant was driving (and thus transporting the cocaine) to his brother's apartment complex. Defendant failed to stop for Officer Moore and, indeed, accelerated away from him, only stopping once he reached the apartment complex. Defendant got out of his car, refused to comply with Officer Moore's directions, and instead ducked behind the other parked car where the larger bag of cocaine was later found. Thus, the evidence supports an inference Defendant attempted to hide the larger amount of cocaine while leaving the smaller corner bag—associated with only personal use—in plain view.

We acknowledge there is no evidence of any cash, other drug paraphernalia, or tools of the drug trade—such as scales or additional baggies or containers—which have otherwise generally supported a conviction for PWISD. However, when viewed

in its entirety, the amount of cocaine, the packaging divided into a personal-use size and a much larger package, and Defendant's evasive behavior and attempts to secrete the larger bag establish, at a minimum, a borderline case to support submission of the PWISD-Cocaine charge to the jury by providing "more than a scintilla of competent evidence to support [the] allegations in the . . . indictment"; therefore, "it [was] the [trial] court's duty to submit the case to the jury." *Everhardt*, 96 N.C. App. at 11, 384 S.E.2d at 568 (citation and quotation marks omitted). Accordingly, we hold the trial court did not err in denying Defendant's motions to dismiss.

## **Conclusion**

For the foregoing reasons, we conclude there was no error in the denial of Defendant's motions to dismiss and in the submission of the PWISD-Cocaine charge to the jury.

NO ERROR.

Judges ZACHARY and ARROWOOD concur.